# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CATHERINE DUKES, Individually and On Behalf of All Others Similarly Situated, | : |
| | : |
| | : Civil Action No. 1:04-cv-10315-PBS |
| Plaintiff, | : |
| | : Related Actions: |
| vs. | :     1:04-cv-10355-PBS |
| | :     1:04-cv-10405-PBS |
| COLUMBIA ACORN FUND, COLUMBIA ACORN | :     1:04-cv-10408-PBS |
| SELECT, COLUMBIA ACORN USA, COLUMBIA | :     1:04-cv-10534-PBS |
| ASSET ALLOCATION FUND, COLUMBIA | :     1:04-cv-10555-MLW |
| BALANCED FUND. COLUMBIA COMMON | :     1:04-cv-10567-MEL |
| STOCK FUND, COLUMBIA DISCIPLINED | :     1:04-cv-10603-PBS |
| VALUE FUND, COLUMBIA DIVIDEND INCOME | : |
| FUND, COLUMBIA GROWTH & INCOME FUND, | : |
| COLUMBIA GROWTH FUND, COLUMBIA | : |
| GROWTH STOCK FUND, COLUMBIA LARGE | : |
| CAP CORE FUND, COLUMBIA LARGE CAP | : |
| GROWTH FUND, COLUMBIA LARGE | : |
| COMPANY INDEX FUND, COLUMBIA LIBERTY | : |
| FUND, COLUMBIA MID CAP GROWTH FUND, | : |
| COLUMBIA MID CAP VALUE FUND, | : |
| COLUMBIA REAL ESTATE EQUITY FUND, | : |
| COLUMBIA SMALL CAP FUND, COLUMBIA | : |
| SMALL CAP VALUE FUND, COLUMBIA SMALL | : |
| COMPANY EQUITY FUND, COLUMBIA SMALL | : |
| COMPANY INDEX FUND, COLUMBIA | : |
| STRATEGIC INVESTOR FUND, COLUMBIA | : |
| TAX-MANAGED AGGRESSIVE GROWTH FUND, | : |
| COLUMBIA TAX-MANAGED GROWTH FUND, | : |
| COLUMBIA TAX-MANAGED GROWTH FUND II, | : |
| COLUMBIA TAX-MANAGED VALUE FUND, | : |
| COLUMBIA TECHNOLOGY FUND, COLUMBIA | : |
| THERMOSTAT FUND, COLUMBIA UTILITIES | : |
| FUND, COLUMBIA YOUNG INVESTOR FUND, | : |
| COLUMBIA ACORN INTERNATIONAL FUND, | : |
| COLUMBIA ACORN INTERNATIONAL SELECT | : |
| FUND, COLUMBIA EUROPE FUND, COLUMBIA | : |

**Caption Continues On Next Page**

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
## OF THE COLUMBIA FUNDS LEAD PLAINTIFF MOVANTS FOR
## CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPOINTMENT
## OF STEERING COMMITTEE, AND APPROVAL OF SELECTION OF LEAD
## <u>COUNSEL, COORDINATING COUNSEL, AND LIAISON COUNSEL</u>

GLOBAL EQUITY FUND, COLUMBIA          :
INTERNATIONAL EQUITY FUND, COLUMBIA   :
INTERNATIONAL STOCK FUND,COLUMBIA     :
NEWPORT ASIA PACIFIC FUND, COLUMBIA   :
NEWPORT JAPAN OPPORTUNITIES FUND,     :
COLUMBIA NEWPORT GREATER CHINA        :
FUND, COLUMBIA NEWPORT TIGER FUND,    :
COLUMBIA CONTRARIAN INCOME FUND,      :
COLUMBIA CORPORATE BOND FUND,         :
COLUMBIA FEDERAL SECURITIES FUND,     :
COLUMBIA FIXED INCOME SECURITIES      :
FUND, COLUMBIA FLOATING RATE          :
ADVANTAGE FUND, COLUMBIA FLOATING     :
RATE FUND, COLUMBIA HIGH YIELD FUND,  :
COLUMBIA HIGH YIELD OPPORTUNITY FUND, :
COLUMBIA INCOME FUND, COLUMBIA        :
INTERMEDIATE BOND FUND, COLUMBIA      :
INTERMEDIATE GOVERNMENT INCOME        :
FUND, COLUMBIA MONEY MARKET FUND,     :
COLUMBIA QUALITY PLUS BOND FUND,      :
COLUMBIA SHORT TERM BOND FUND,        :
COLUMBIA STRATEGIC INCOME FUND,       :
COLUMBIA US TREASURY INDEX FUND,      :
COLUMBIA CALIFORNIA TAX-EXEMPT FUND,  :
COLUMBIA CONNECTICUT INTERMEDIATE     :
MUNICIPAL BOND, COLUMBIA              :
CONNECTICUT TAX-EXEMPT FUND,          :
COLUMBIA FLORIDA INTERMEDIATE         :
MUNICIPAL BOND FUND, COLUMBIA HIGH    :
YIELD MUNICIPAL FUND, COLUMBIA        :
INTERMEDIATE TAX-EXEMPT BOND FUND,    :
COLUMBIA MANAGED MUNICIPALS FUND,     :
COLUMBIA MASSACHUSETTS                :
INTERMEDIATE MUNICIPAL BOND FUND,     :
COLUMBIA MASSACHUSETTS TAX-EXEMPT     :
FUND, COLUMBIA MUNICIPAL MONEY        :
MARKET FUND, COLUMBIA NATIONAL        :
MUNICIPAL BOND FUND, COLUMBIA NEW     :
JERSEY INTERMEDIATE MUNICIPAL BOND    :
FUND, COLUMBIA NEW YORK               :
INTERMEDIATE MUNICIPAL BOND FUND,     :
COLUMBIA NEW YORK TAX-EXEMPT FUND,    :
COLUMBIA OREGON MUNICIPAL BOND        :
FUND, COLUMBIA PENNSYLVANIA           :

**[Caption Continues On Next Page]**

INTERMEDIATE MUNICIPAL BOND FUND,                    :
COLUMBIA RHODE ISLAND INTERMEDIATE                   :
MUNICIPAL BOND FUND, COLUMBIA TAX-                    :
EXEMPT FUND, COLUMBIA TAX-EXEMPT                      :
INSURED FUND, COLUMBIA SMALL CAP                     :
GROWTH FUND, COLUMBIA EUROPEAN                        :
THEMATIC EQUITY FUND, COLUMBIA                        :
GLOBAL THEMATIC EQUITY FUND,                          :
COLUMBIA DAILY INCOME COMPANY FUND                   :
(collectively known as "COLUMBIA FUNDS");            :
COLUMBIA ACORN TRUST, COLUMBIA                        :
BALANCED FUND INC./OR, COLUMBIA                       :
COMMON STOCK FUND INC., COLUMBIA                      :
DAILY INCOME COMPANY, COLUMBIA FIXED                 :
INCOME SECURITIES FUND INC., COLUMBIA                :
FLOATING RATE ADVANTAGE FUND,                         :
COLUMBIA FLOATING RATE FUND,                          :
COLUMBIA FUNDS TRUST I, COLUMBIA                      :
FUNDS TRUST II, COLUMBIA FUNDS TRUST                  :
III, COLUMBIA FUNDS TRUST IV, COLUMBIA                :
FUNDS TRUST IX, COLUMBIA FUNDS TRUST                  :
V, COLUMBIA FUNDS TRUST VI, COLUMBIA                  :
FUNDS TRUST VII, COLUMBIA FUNDS TRUST                 :
VIII, COLUMBIA FUNDS TRUST XI, COLUMBIA               :
GROWTH FUND INC., COLUMBIA HIGH YEILD                 :
FUND INC., COLUMBIA INSTITUTIONAL                     :
FLOATING RATE INCOME FUND, COLUMBIA                   :
INTERNATIONAL STOCK FUND INC.,                        :
COLUMBIA MID CAP GROWTH FUND INC.,                    :
COLUMBIA OREGON MUNICIPAL BOND FUND                  :
INC., COLUMBIA NATIONAL MUNICIPAL                     :
BOND FUND INC., COLUMBIA REAL ESTATE                 :
EQUITY FUND INC., COLUMBIA SHORT TERM                :
BOND FUND INC., COLUMBIA SMALL CAP                   :
GROWTH FUND INC., COLUMBIA STRATEGIC                 :
INVESTOR FUND INC., COLUMBIA                          :
TECHNOLOGY FUND INC. (collectively known as          :
"COLUMBIA FUNDS REGISTRANTS");                        :
FLEETBOSTON FINANCIAL CORPORATION;                   :
COLUMBIA MANAGEMENT GROUP, INC.;                     :
COLUMBIA MANAGEMENT ADVISORS, INC.;                  :
COLUMBIA WANGER ASSET MANAGEMENT,                    :
L.P.; COLUMBIA FUNDS DISTRIBUTOR, INC.;              :
and JOHN DOES 1-100,                                 :
                                                     :
                            Defendants.              :

The Columbia Funds Lead Plaintiff Movants, as defined below ("Movants"), hereby move this Court for entry of an order: (i) consolidating the above-captioned actions (the "Massachusetts Actions"); (ii) appointing the Columbia Funds Lead Plaintiff Movants as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") with respect to all claims brought under the Securities Exchange Act of 1934 and the Securities Act of 1933 (collectively, the "Massachusetts PSLRA Claims"); (iii) approving the Columbia Funds Lead Plaintiff Movants' designation of a steering committee comprised of class members Jackie Williams, Robert Kemp, Edward Berkely, Paul H. Nelson, and John Virtuoso to represent the Columbia Funds Lead Plaintiff Movants as Lead Plaintiff; (iv) approving the Columbia Funds Lead Plaintiff Movants' selection of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), pursuant to the PSLRA, as Lead Counsel of the PSLRA Claims, and as Coordinating Counsel with respect to the PSLRA Claims, and all other claims asserted in the above-captioned actions (the "Massachusetts Non-PSLRA Claims") (collectively, with the PSLRA Claims, the "Massachusetts Claims"); and (v) appointing the Columbia Funds Lead Plaintiff Movants' selection of Moulton & Gans, P.C. ("Moulton & Gans") as Liaison Counsel.[1]

## INTRODUCTION

As of April 12, 2004 there were eight related actions pending in this District brought by purchasers, individually and/or on behalf of a class, of units of one or more of the Columbia Funds (as defined in the caption of this filing) between February 13, 1999 to January 14, 2004, inclusive (the "Class Periods"), or on behalf of one or more Columbia Funds (collectively, the "Massachusetts Actions"). The Massachusetts Actions allege a variety of claims which the

---

[1] The Columbia Funds Lead Plaintiff Movants have simultaneously filed a Notice of Filing of the Motion in the Southern District of New York where two related Columbia Actions are pending, incorporating this Motion by reference as if filed therein.

Columbia Funds Lead Plaintiff Movants have divided into two categories for the purpose of

presentation to the Court for determination of this motion. One category of claims, the

Massachusetts PSLRA Claims, allege violations of §§ 11 and 15 of the Securities Act of 1933

(the "Securities Act"), 15 U.S.C. §§ 77(k) and (o); §§ 10(b) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and  78t(a), and Securities and Exchange

Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder. The other

category of claims, the Massachusetts Non-PSLRA Claims, allege violations of § 206 of the

Investment Advisers Act of 1940, 15 U.S.C. §80b-15; §§ 34 and 36 of the Investment Company

Act of 1940, 15 U.S.C. §80a-33 and a-35, and state law claims including breach of fiduciary

duties, aiding and abetting, civil conspiracy, and common law fraud.[2].

**The Multi-District Transfer Proceedings:** On February 20, 2004, the Panel on Multidistrict

Litigation (the "Panel") transferred actions against six different mutual fund families alleging

claims relating to market timing and/or late trading to the District of Maryland under MDL-1586,

*In re Mutual Funds Investment Litigation*. On April 9, 2004, counsel for defendants FleetBoston

Financial Corporation, Fleet National Ban, Columbia Management Group, Inc., Columbia Funds

Services, Inc., Columbia Management Advisors, Inc., Columbia Wanger Asset Management,

L.P., and Columbia Funds Distributor, Inc. notified the Panel of actions in which they were

named as defendants and alleging similar claims as MDL-1586, pending in this District and the

---

[2] Actions against the same or similar defendants and containing the same or similar allegations are pending in the
Southern District of New York. These actions, collectively with the Massachusetts Actions, are referred to herein as
the "Columbia Actions." *See* Exhibit A (a complete list of the Columbia Actions, including the Massachusetts
Actions) and Exhibit B (schedule of Columbia Actions by claims). These Exhibit references and all others herein
(unless otherwise indicated) refer to the documents attached to the Declaration of Nancy F. Gans in Support of the
Motion of the Columbia Funds Lead Plaintiff Movants for Consolidation, Appointment as Lead Plaintiff,
Appointment of Steering Committee, And Approval of Selection of Lead Counsel, Coordinating Counsel, and
Liaison Counsel, submitted contemporaneously herewith (the "Gans Decl.").

Southern District of New York, and requested that these actions be designated potential tag along cases to MDL-1586 and transferred to the District of Maryland.

## FACTUAL BACKGROUND[3]

Mutual funds are meant to be long-term investments and are therefore the favored savings vehicles for many Americans' retirement and college funds.  Unbeknownst to investors, from at least as early as December 15, 1998 and until as late as December 8, 2003, defendants engaged in fraudulent and wrongful schemes that enabled certain favored investors to reap many millions of dollars in profit, at the expense of Columbia Funds' investors, through secret and wrongful timed trading.  In exchange for allowing and facilitating this improper conduct, the "Fund Defendants" received substantial fees and other remuneration for themselves and their affiliates to the detriment of Movants who knew nothing of these illicit arrangements.[4]  The complaints allege that Columbia Management Advisors, Inc. and Columbia Wanger Asset Management, L.P. (collectively, the "Advisors"), as manager of the Columbia Funds, and each of the relevant fund managers, profited from fees the Advisors charged to the Columbia Funds that were measured as a percentage of the funds under management.  In exchange for the right to engage in wrongful timing, the John Doe Defendants agreed to park substantial assets in Columbia Funds.  Furthermore, the John Doe Defendants secretly disguised additional, improper compensation to the Fund Defendants as interest payments on monies loaned by the Fund Defendants to the John Doe Defendants for the purpose of financing the illegal scheme.

"Timing" is an arbitrage strategy involving short-term trading that can be used to profit from mutual funds' use of "stale" prices to calculate the value of securities held in the funds'

---

[3] These facts are drawn from the allegations in the complaint captioned *Dukes v. Columbia Acorn Fund,* No. 04-cv-10315 (D. Mass. Filed on Feb. 13, 2004) (Saris, J.) (the "*Dukes* Complaint").

[4] The "Fund Defendants" are FleetBoston Financial Corporation, Columbia Management Group, Inc., the Advisors, Columbia Funds Distributor, Inc., the Columbia family of mutual funds and each of the funds' registrants.

portfolio. These prices are "stale" because they do not necessarily reflect the "fair value" of such securities as of the time the NAV is calculated.  A typical example is a U.S. mutual fund that holds Japanese securities.  Because of the time zone difference, the Japanese market may close at 2 a.m. New York time.  If the U.S. mutual fund manager uses the closing prices of the Japanese securities in his or her fund to arrive at an NAV at 4 p.m. in New York, he or she is relying on market information that is fourteen hours old.  If there have been positive market moves during the New York trading day that will cause the Japanese market to rise when it later opens, the stale Japanese prices will not reflect that increase, and the fund's NAV will be artificially low.  Put another way, the NAV would not reflect the true current market value of the stocks the fund holds.

Effective timing captures an arbitrage profit that comes dollar-for-dollar out of the fund; the timer steps in at the last moment and takes part of the buy-and-hold investors' upside when the market goes up, so the next day's NAV is reduced for those who are still in the fund.  If the timer sells short on bad days, the arbitrage has the effect of making the next day's NAV lower than it would otherwise have been, thus magnifying the depressed returns that investors are experiencing in a declining market.

On  September 4, 2003 *The Wall Street Journal* reported that the New York Attorney General Elliot Spitzer had filed a complaint in New York Supreme Court alleging that certain mutual fund companies secretly allowed, and in some instances facilitated, a New Jersey-based hedge fund to engage in prohibited and/or fraudulent trading in mutual fund shares (the "Spitzer Complaint"). In return for this favored treatment, which damaged the long-term mutual fund investors, the hedge fund parked funds in financial instruments controlled by the fund companies

or their affiliates to increase fund management fees, and entered into other arrangements which benefited the fund companies and/or their affiliates.

The Spitzer Complaint received substantial press coverage and sparked additional investigations by state agencies, the SEC and the U.S. Attorney for the Southern District of New York, and led to calls for more regulation and tougher enforcement of the mutual and hedge fund industries. On September 5, 2003, *The Wall Street Journal* reported that the New York Attorney General's Office had subpoenaed "a large number of hedge funds" and mutual funds as part of its investigation, "underscoring concern among investors that the improper trading of mutual-fund shares could be widespread" and that the SEC, joining the investigation, planned to send letters to mutual funds holding about 75% of assets under management in the U.S. to inquire about their practices with respect to market-timing and fund-trading practices.

In a letter to shareholders dated January 30, 2004, and later posted on Columbia Management's website, Columbia Management and Columbia Distributor acknowledged that the SEC and the New York Attorney General have been investigating the mutual fund trading activities in the Columbia Funds, defined below. Further, Columbia Management and Columbia Distributor stated that certain privileged investors were permitted to market time the Columbia Newport Tiger Fund, Columbia Growth Stock Fund, and the Columbia Young Investor Fund— which targeted children—from as early as 1998 to 2003. In addition, Columbia Management and Columbia Distributor stated that they had determined that the portfolio manager of the Columbia Small Company Equity Fund engaged in market timing through his 401(K) account in various Columbia Funds.

On February 13, 2004, *The Wall Street Journal* reported that FleetBoston acknowledged that it had allowed improper market timing in the Columbia Young Investor Fund, Columbia

Newport Tiger Fund, and Columbia Growth Stock Fund and that the Columbia Funds, accepted "sticky assets" from certain privileged investors in exchange for timing capacity in the Columbia Funds.

## ARGUMENT

### POINT I

### THE ACTIONS SHOULD BE CONSOLIDATED

Consolidation is appropriate when there is "a common question of law or fact pending before the Court." Fed. R. Civ. P. 42(a).  *See New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 7-8 (1st Cir. 1988) (consolidation of cases alleging common facts and law appropriate under state consolidation statute based upon Fed. R. Civ. P. 42(a), *cert. denied* 489 U.S. 1077 (1989)); *In re PRI Automation, Inc. Secs. Litig*., 145 F. Supp. 2d 138, 140 (D. Mass. 2001) (Keeton, J.).

The standard under Rule 42(a) is clearly met here.  Each complaint alleges that defendants engaged in unlawful and deceitful "market timing" activity involving Columbia Funds that enabled favored investors to reap millions of dollars in profits.  The complaints also each allege that, in exchange for allowing and facilitating this misconduct, the Fund Defendants received substantial fees from so-called "sticky assets", which the John Doe Defendants agreed to park in the Columbia Funds, and that the ill- gotten gains came dollar for dollar out of the pockets of ordinary long-term investors, and imposed significant unnecessary transaction costs. The similarities between the Massachusetts Actions is evidenced in the following excerpt from the *Dukes* Action, alleging violations of the Securities Act, the Exchange Act, and the Investment Advisers Act, which also appears, in large part, in the other Columbia Funds-related complaints filed in this District:

In exchange for allowing and facilitating this improper conduct, the Fund Defendants received substantial fees and other remuneration for themselves and their affiliates to the detriment of plaintiff and other members of the Class who knew nothing of these illicit arrangements. Specifically, the Advisors, as managers of the Columbia Funds, and each of the relevant fund managers, profited from fees the Advisors charged to the Columbia Funds that were measured as a percentage of the fees under management. In exchange for the right to engage in timing, which hurt plaintiff and other Class members, materially and negatively affecting the value of the Columbia Funds, the John Doe Defendants agreed to park substantial assets in the Funds, thereby increasing the assets under Columbia Funds' management and the fees paid to Columbia Funds' managers. The assets parked in the Columbia Funds in exchange for the right to engage in timing have been referred to as "sticky assets." The synergy between the Fund Defendants and the John Doe Defendants hinged on ordinary investors' misplaced trust in the integrity of mutual fund companies and allowed defendants to profit handsomely at the expense of plaintiff and other members of the Class.

*Dukes v. Columbia Acorn Fund*, No. 04-CV-10315 (Complaint, at ¶ 26).[5]

Given that the Massachusetts Actions contain the same or similar defendants, overlapping allegations and common questions of fact, the standards for consolidating the Actions pursuant to Fed R. Civ. 42(a) are clearly met, regardless of the legal theories advanced by plaintiffs. Plainly, consolidation for pretrial purposes under these circumstances will save judicial and private resources, and will promote efficiency and consistency in the prosecution of these Actions.

---

[5] *Compare, e.g.,AB Medical Equipment Corp. v. FleetBoston Fin. Corp.*, No. 04-CV-10355 (D. Mass. filed on Feb. 23, 2004) (Saris, J.) (Complaint at ¶¶ 31-37) (alleging nearly identical facts as *Dukes* Complaint); *Wick v. FleetBoston Fin. Corp.*, No. 03-CV-10408 (D. Mass. filed on March 1, 2004) (Saris, J.) (Complaint at ¶ 27) (same); *Slaybe v. Columbia Management Advisers,* No. 04-CV-10534 (D. Mass. filed on March 1, 2004) (Saris, J.) (Complaint at ¶¶ 2-3) (same); and *Armetta v. FleetBoston Fin. Corp.*, No. 04-CV-10555 (D. Mass. filed on March 19, 2004) (Wolf, J.) (Complaint at ¶ 26) (same).

## POINT II

### THE COLUMBIA FUNDS LEAD PLAINTIFF MOVANTS
### SHOULD BE APPOINTED LEAD PLAINTIFF

The Columbia Funds Lead Plaintiff Movants should be appointed lead plaintiff because

they have the largest financial interest in this litigation and otherwise meet the relevant

requirements of Fed. R. Civ. P. 23.  Moreover, Movants have proposed a leadership structure

that makes the most sense for this litigation and which is fully consistent with the requirements

and underlying purpose of the PSLRA.  Courts have held that, ideally, a lead plaintiff group

should be cohesive enough to ensure adequate cooperation among its members in the

management of the action, yet should also reflect the diversity of the class it seeks to represent.

*See generally In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998)

(holding that the combination of an institutional investor and an individual would be most

representative of the class, composed of individual and institutional investors); *In re Universal*

*Access, Inc.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) ("the appointment of a group of persons to

act as lead plaintiff is appropriate under the PSLRA and, indeed, is sometimes favored in light of

the ***diversity of experience and interests of the group members***.") (emphasis added.)  Movants

meet the criteria of cohesiveness and diversity. Movants are comprised of class members who

purchased shares in at least twenty-seven different funds within the Columbia family of funds,

and thus are more representative of the class than any other movant(s).[6]  Moreover, the Columbia

Funds Lead Plaintiff Steering Committee is comprised of five members of the Columbia Funds

---

[6] As is discussed more fully below, these actions are different from the typical PSLRA action in several ways,
including that the class is comprised of investors numerous funds in the Columbia family of mutual funds. For this
reason, an effort has been made to put forth as lead plaintiff investors from as many of the funds as possible.
Consequently, the number of lead plaintiff movants is correspondingly greater than the ordinary PSLRA action,
which is typically brought against a single company.

Lead Plaintiff Movants and is unquestionably a small, cohesive unit that can easily and ably coordinate their efforts.[7]

### A.    The Procedure Required By the PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).  Plaintiff in the action *Dukes v. Columbia Acorn Funds*, No. 04-CV-101315, filed in this District on February 13, 2003, caused notice to be published on *PR Newswire* on the same day.  *See* Exhibit D. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).  Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa)    has either filed the complaint or made a motion in response to a notice. . .
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[7] A complete list of the Columbia Funds Lead Plaintiff Movants is set forth in Exhibit C.

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### B.    Movants Satisfy The "Lead Plaintiff" Requirements Of The PSLRA

#### 1.    Movants Have Complied With the PSLRA and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on April 13, 2004.  Movants' application is thus timely.  Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Exhibit E.[8] In addition, Movants have selected and retained competent counsel to represent them and the Class.  *See* Exhibit F. Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff, and their selection of Milberg Weiss as Lead Counsel and Moulton & Gans as Liaison Counsel approved by the Court.

#### 2.    Movants Have the Requisite Financial Interest In The Relief Sought By The Class

In securities cases brought pursuant to the PSLRA, the relative financial interest of lead plaintiff movants is typically measured by the difference between the class-period purchase price of the securities on the one hand, and sale price of the securities subsequent to disclosure of defendants' materially false and misleading statements on the other.[9]  These cases are different

---

[8]  Exhibit E contains the certification of each of the Columbia Funds Lead Plaintiff Movants, filed pursuant to the PSLRA, setting forth their relevant class period transactions in Columbia Funds.

[9] *See Lax v. First Merchants*, 1997 U.S. Dist. LEXIS 11866 at *17 (N.D. Ill. Aug. 6, 1997) (The PSLRA does not state how the court should determine who has the largest financial interest, but four factors are surely relevant: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs).

because the gravamen of plaintiffs' allegations is that defendants failed to disclose that they improperly siphoned money out of the Columbia Funds through timed trading, and excessive fees, thereby decreasing the actual NAV of the funds. In these cases, investors were harmed, not only because they purchased the Columbia Fund units at artificially inflated prices, without knowledge of this pattern and practice, but also because, once having invested their money in Columbia Funds, unbeknownst to them, their money was improperly removed throughout the course of the class period as defendants profited from their timed trading.

Consequently, the typical PSLRA financial interest analysis may not be workable or appropriate in these cases. Recognizing this, Movants retained KeyPoint Consulting LLC ("KeyPoint") to devise and implement a methodology for determining relative financial interest in this litigation. KeyPoint is a nationally renowned economic and financial consulting firm with offices in Los Angeles, Houston, and Emeryville, California. The firm provides research and consulting services primarily in the areas of antitrust, banking and finance, commercial damages, forensic accounting, intellectual property and regulation. Movants submit herewith as Exhibit G the Declaration of Marc Vellrath, Ph. D., CFA dated April 13, 2004 ("Vellrath Decl."). Vellrath is an economist and KeyPoint Principal. *See* Vellrath Decl. at ¶1.

According to Vellrath, one can quantify an investor's "exposure" by calculating the shareholder's "dollar days of holdings," or, equivalently, the shareholder's "average dollar holdings" for a typical day during the class period. A "dollar day of holdings" in a mutual fund is simply one dollar invested in the fund for one day. For example, if an investor held $1,000 in fund ABC for 500 days during the class period, that investor had 500,000 dollar days of holdings in ABC fund during the class period. Therefore, an investor's "average dollar holdings" is the dollar value of his or her holdings on average each day during the class period calculated by

dividing his or her total "dollar days of holdings" by the number of days in the class period.[10]  As set forth in the Vellrath Declaration, this measure of financial interest is appropriate here because the longer an investor owns shares of a fund that permits improper trading, the more likely that he or she would suffer losses because of this misconduct.  In particular, for a group of investors who purchased mutual fund shares during the class period, the harm suffered by those investors would most likely be, at a minimum, proportionate to both their dollar days of holdings and their average dollar holdings.  *See id.* at ¶¶ 8-15.

Movants' average dollar holdings are $498,550 and the Columbia Funds Lead Plaintiff Movants' Steering Committee's average dollar holdings are $472,432. *See* Vellrath Dec. at ¶16. To our knowledge, this represents the largest financial interest of any competing lead plaintiff movant.

### 3.    Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See e.g. Singer v. Nicor*, 2002 U.S. Dist. LEXIS 19884 (N.D. Ill. Oct. 17, 2002).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative.  Consequently, in deciding a

---

[10] Continuing with the previous example, if the class period were 1,000 days, the investor who had 500,000 dollar-days of holdings in ABC fund during the same period had average dollar holdings of $500 each.

motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Lax,* 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). The Columbia Funds Lead Plaintiff Movants should be appointed Lead Plaintiff because they satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See De La Fuente v. Stokley-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) and *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See In re Great Southern Life Insurance Company Sales Practices Litigation*, 192 F.R.D. 212, 217 (N.D. Tex. 2000) (citing *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981)). Movants satisfy this requirement because, just like all other class members, they: (1) purchased units in twenty-seven different Columbia Funds during the Class

Period; (2) purchased Columbia Funds units in reliance upon the allegedly materially false and misleading statements issued by defendants and the integrity of the market for the units; and (3) suffered damages as a result of market timing. Thus, Movants' claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of movants to represent the Class to the existence of any conflicts between the interest of those movants and the members of the Class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiffs and the class members and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (*citing Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (lst Cir. 1985)).

Here, Movants are an adequate representative of the Class. Their interests are aligned with the interests of the Class because they all purchased Columbia Funds units pursuant to materially false and misleading statements. Furthermore, there is no evidence of antagonism between Movant and the Class. In addition, as shown below, Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## POINT III

**MILBERG WEISS SHOULD BE APPOINTED AS LEAD COUNSEL OF THE PSLRA CLAIMS AND COORDINATING COUNSEL OF THE MASSACHUSETTS CLAIMS AND MOULTON & GANS SHOULD BE APPOINTED LIAISON COUNSEL FOR THE CLASS**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Movant has selected Milberg Weiss to serve as Lead Counsel and Moulton & Gans to serve as Liaison Counsel. Milberg Weiss and Moulton & Gans have substantial experience in the prosecution of shareholder and securities class actions, and have the resources necessary to efficiently conduct this litigation. *See* Exhibits F and G. Accordingly, the Court should approve Movants' selection of Lead Counsel and Liaison Counsel.

Milberg Weiss should also be appointed coordinating counsel of the Massachusetts Actions. Given the multiplicity of claims presented by the Massachusetts Actions and the possibility that numerous other Columbia-related actions will be centralized in this District, the appointment of Coordinating Counsel is necessary to avoid chaos and to ensure efficient management of the litigation. *The Manual for Complex Litigation* cautions that without coordination, complex litigations raising similar issues and involving numerous parties and separate counsel can result in a "waste of time and money, in confusion and indirection, and in unnecessary burden on the court." *Manual for Complex Litigation*, 3d Ed. at 36 (2003). In order to avoid these unwanted results, the Manual advises that "special procedures for coordination of counsel are therefore needed and should be instituted early in the litigation to avoid unnecessary costs and duplicative activity." *Id.*

The Massachusetts Actions are precisely the type of complex multiparty litigation that will benefit from the appointment of Coordinating Counsel.  As detailed in Point I above, there are eight Columbia-related actions in this District, and two in other districts.  The various actions assert a plethora of claims.  Yet the various actions allege essentially the same facts, namely, that defendants engaged in a scheme whereby certain privileged investors improperly traded mutual fund shares to the detriment of ordinary investors. The potential for unnecessary duplication and inefficiency is therefore present under these circumstances and, accordingly, the appointment of Coordinating Counsel is appropriate. *See Manual for Complex Litigation*, 3d Ed. at 36-37 (2003).

Once appointed, in order to the enable the efficient prosecution of the Massachusetts Actions, Coordinating Counsel should have the responsibility and authority to, among other things, "coordinate with all other plaintiffs' counsel to reach agreements on briefing schedules, number and lengths of briefs, and other matters that concern the core issues involved in all or most of the now consolidated cases." *Baystate Health Sys. v. Thompson*, 254 F. Supp. 2d 80, 82 (D. D.C. 2003). *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 475 n. 66 (E.D. Penn. 1995) ("In this capacity, [Coordinating Counsel] coordinated all court filings and discovery, and generally coordinated the litigation process to ensure that required tasks were performed.  With respect to pretrial preparation, trial, and settlement, [Coordinating Counsel] shared strategic decision-making with [other counsel].").

Milberg Weiss is uniquely qualified to act as Coordinating Counsel by virtue of its resources, experience and track record in the area of class action litigation. Indeed, Milberg Weiss has spearheaded some of the largest and most complex class actions in history, such as *In re NASDAQ Market-Makers Antitrust Litig*. Civ 3996 (S.D.N.Y.), *In re Initial Public Offering*

*Sec. Litig., Master File* No. 21 MC 92 (S.D.N.Y.), and *In re Enron Corp., Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Accordingly, the Court can rest assured that Milberg Weiss will similarly be capable of harmonizing the efforts of all counsel involved in this litigation. In addition, because it represents the movants with the largest financial interest in the PSLRA Claims, as demonstrated above, Milberg Weiss is strongly motivated to ensure that all of the Massachusetts Actions, which are founded on common factual allegations, proceed efficiently and in lock-step. Accordingly, the Court should approve the Columbia Funds Lead Plaintiff Movants' selection of Milberg Weiss as Coordinating Counsel.

### **CONCLUSION**

For all the foregoing reasons, Movants respectfully request that the Court: (i) consolidate the Massachusetts Actions; (ii) appoint the Columbia Funds Lead Plaintiff Movants as Lead Plaintiff pursuant to the PSLRA with respect to the Massachusetts PSLRA Claims; (iii) approve the Columbia Funds Lead Plaintiff Movants' designation of a steering committee comprised of class members Jackie Williams, Robert Kemp, Edward Berkely, Paul H. Nelson, and John Virtuoso to represent the Columbia Funds Lead Plaintiff Movants as Lead Plaintiff; (iv) approve the Columbia Funds Lead Plaintiff Movants' selection of Milberg Weiss, pursuant to the PSLRA, as Lead Counsel of the PSLRA Claims; and appoint Milberg Weiss as Coordinating Counsel with respect to the Massachusetts Claims; and (v) approve the Columbia Funds Lead Plaintiff Movants' selection of Moulton & Gans as Liaison Counsel or the Class.

DATED:  April 13, 2004

Respectfully submitted,

**MOULTON & GANS, P.C.**

By:  /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  (617) 369-7979

*Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**
Melvyn I. Weiss
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
Sharon M. Lee
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:  (212) 594-5300

*Proposed Lead Counsel and Coordinating
Counsel for the Class*

**LAW OFFICES OF CURTIS V. TRINKO,
LLP**
Curtis V. Trinko
16 West 46th Street, 7th Floor
New York, NY  10036
(212) 490-9550

**LAW OFFICES OF CHARLES J. PIVEN,
P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland  21202
(410) 986-0036

**RABIN, MURRAY & FRANK LLP**
Eric J. Belfi
275 Madison Avenue
New York, NY  10016
(212) 682-1818

**GLANCY & BINKOW LLP**
Lionel Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
(310) 201-9150

*Plaintiffs' Counsel*