# EXHIBIT H

## DECLARATION OF MARC VELLRATH, Ph.D., CFA

Marc Vellrath, under penalties of perjury, hereby declares:

1.      I am an economist and a Principal of KeyPoint Consulting LLC, an economic and financial consulting firm with offices in Emeryville, CA, Houston and Los Angeles.  My firm and I provide research and consulting services primarily in the areas of antitrust, banking and finance, commercial damages, forensic accounting, intellectual property and regulation.

2.      I hold M.S. and Ph.D. degrees in economics from Carnegie Mellon University and an MBA degree from the University of Washington.  I also have earned the Chartered Financial Analyst designation, or CFA, awarded by the Association for Investment Management and Research.  I formed the consulting firm now known as KeyPoint Consulting in 1996; currently, the firm has ten Principals and approximately twenty-five employees.  Before forming KeyPoint, I was a Vice President and Principal of Analysis Group, Inc., an economics consulting firm, for six years, and a senior economist with Ernst & Young, an international accounting and consulting firm, for five years.  For a total of eight years, I served on the faculties of the graduate schools of business at New York University and the University of Washington.  At both NYU and UW, I taught a variety of undergraduate and graduate courses, including microeconomics, money and banking, corporate finance and investments.  I also have taught in the loan officer training programs of two large commercial banks, Morgan Guaranty Trust Company and Chemical Bank of New York, and have been a contract researcher for Frank Russell Company, a pension fund advisory firm.  A copy of my resume, which lists all cases in which I have testified in the past four years, is attached as Exhibit 1 to this declaration.

*Page 1*

3.    I have conducted numerous investigations and consulting engagements involving a variety of economic and financial issues in many different industries. As a consultant to law firms, I have investigated economic and financial issues arising in disputes involving antitrust, patent infringement, fraud and fraudulent conveyances, breaches of fiduciary duty, contract breaches, and other matters. I have been retained by counsel for, and have testified at trial on behalf of, both plaintiffs and defendants. As a consultant to businesses and governmental agencies, I have prepared strategic plans, marketing plans, feasibility studies, valuations, and various other studies to improve management decision-making, increase productivity and efficiency, control costs and, in the case of corporations, raise profits.

4.    I have been retained by Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") to investigate certain financial issues arising out of the Mutual Fund Industry Litigation.[1] More specifically, attorneys at Milberg Weiss have asked me to propose a "metric" or "indicator" that one might use to assess and compare the financial interests of different class members in the outcome of the various lawsuits that have been (or may be) brought as part of the Mutual Fund Industry Litigation. My firm is being compensated for my work on this engagement at my standard hourly rate, which is $415.

5.    Briefly, the conduct at issue in this litigation involves improper "timing" trades in mutual fund shares or improper "late" trades in mutual fund shares or both. In the words of the Attorney General of the State of New York, "'Timing' is an investment technique involving short-term, 'in and out' trading of mutual fund shares. The technique is designed to exploit

---

[1] Milberg Weiss has filed lawsuits on behalf of investors of various mutual funds, including funds sponsored by Alliance Capital Management LP, Bank of America Corp., Bank One Corp., Federated Investors, Inc., Janus Capital Group, Inc., Massachusetts Financial Services Company (a subsidiary of Sun Life Financial Inc.), Strong Financial Corp., and Putnam Investments Trust (a subsidiary of March & McLennan Companies, Inc). It is my understanding that "Mutual Fund Industry Litigation" refers to these lawsuits and similar lawsuits filed by Milberg Weiss and by other law firms.

inefficiencies in the way mutual fund companies price their shares."[2] Late trades are trades

resulting from orders placed after 4:00 pm EST on a given day which are executed at a price for

the shares computed as of 4:00 pm EST, in violation of the so-called "forward-pricing rule."[3]

Such trades allow a trader to capitalize on post 4:00 p.m. information, which those who buy their

shares legally (i.e., subject to the forward pricing rule) cannot do.[4]

6.    It is widely recognized that both timing trades and late trades harm longer-term

investors in mutual funds. Traders who use timing and/or late trading can "dilute" the returns

earned by longer-term investors: These traders tend to be invested in the targeted fund on days

when the fund is likely to earn a (large) positive return, but out of the fund on days when the

fund is likely to earn a (large) negative return. Thus, on "good days," these traders get to share

in the positive returns on the fund's investment portfolio (even if the fund manager is unable to

invest their cash). But on "bad days," these traders hold cash, and so avoid sharing in the

negative returns on the fund's investment portfolio on those days.[5] The end result is that some of

the fund's investment returns are "skimmed" off by timing traders and late traders. In addition,

improper trading can cause a fund to incur transaction costs that it would not otherwise incur,

which costs are borne, in large part, by long-term investors. Furthermore, a fund manager may

---

[2] *State of New York v. Canary Capital Partners, LLC, et al., No. 402830/2003 (N.Y. Sup. Ct., filed September 3, 2003),* page 3.

[3] Generally, mutual fund prices are computed once each day, usually as of 4:00 pm EST. These prices are commonly referred to as "Net Asset Values" or as "NAVs." Under the forward pricing rule, which became law in 1968, orders placed up until 4:00 pm EST are filled at a fund's NAV determined for that day, while orders placed after 4:00 pm EST are filled at the NAV calculated for the *next* day.

[4] New York's Attorney General has compared late trading to "betting today on yesterday's horse races." See *State of New York v. Canary Capital Partners, LLC, et al.,* page 3. It might be more accurate to say that a late trader is betting today on today's races – but after the horses have made the first turn. A late trader does not know the outcome of his bet – on the change in a fund's NAV from one day to the next – with certainty, but does have special information that let's him or her know when to lay down a bet.

[5] Using short selling and hedging techniques, timers and late traders also can profit from downward price movements.

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                    *Page 3*

enter into transactions or implement strategies in response to improper trading that do not serve the interests of long-term investors (or at least would not, absent the improper trading).[6]

7.    The dollar amount of harm suffered by any particular mutual fund investor will depend on a variety of factors, such as the extent to which a particular fund permitted, aided and/or abetted improper trading and the intra-day predictability of day-to-day movements of a given fund's NAV.  In all cases, however, an important determinant of the harm suffered by a particular investor will be the extent to which the investor was "exposed" to dilution and other costs imposed on non-favored investors by the improper conduct.  Such exposure depends primarily on the dollar value of the investor's mutual fund holdings and also on the length of time that the investor holds his or her interest in the fund.

8.    One can quantify an investor's exposure by computing the investor's "dollar days of holdings" during the class period, or, equivalently, the investor's "average dollar holdings" for a typical day during the class period.[7]  A dollar day of holdings in fund ABC is simply one dollar invested in fund ABC for one day.[8]  An investor's average dollar holdings is the dollar value of his or her holdings on average each day during the class period.  Thus, an investor's average dollar holdings is his or her total dollar days of holdings divided by the number of days in the class period.[9]

---

[6] The description of potential of financial impacts in this paragraph is not meant to be exhaustive.

[7] I understand that the class period in the lawsuit brought by Milberg Weiss against Columbia Funds Distributors, Inc., and related parties (including, but not limited to, the Columbia family of funds) runs from February 13, 1999, through January 14, 2004.  All computations reported in this declaration assume this class period.

[8] As an illustration, suppose an investor holds $1,000 in fund ABC for 500 days during the relevant class period. That investor had five hundred thousand dollar-days of holdings of fund ABC during the class period.  An investor who holds $5,000 in fund ABC, but for only 100 days during the relevant class period also had five hundred thousand dollar days of holdings in fund ABC during the class period.

[9] Continuing the previous example, if the class period in this illustration were 1000 days, then each of these investor's had average dollar holdings, on average over the entire class period, of $500 dollars.

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA

9.    Dollar days of holdings and average dollar holdings are closely related metrics, since the latter is computed from the former (by dividing by the number of days in the class period). Of the two, average dollar holdings may have the more natural interpretation: An investor's average dollar holdings measures the dollar value of his or her exposure to the drain on fund resources caused by timing trades and late trades, on an average day during the class period. I therefore focus on average dollar holdings in the remainder of this declaration.

10.    Average dollar holdings during the class period is a sound and useful indicator of investors' interests in the Mutual Fund Industry Litigation because this measure reflects two important aspects of exposure to the harmful effects of timing trades and late trades. First, the longer an investor owns shares in a fund that permits improper trading, the more likely it is that he or she will suffer the detrimental effects of improper trading. Second, the dollar amount that an investor loses because of improper trading, on any given day, will be proportional to his total holdings on that day.

11.    Among any given group of investors, average dollar holdings can be used to assess and compare the individual investors' exposures to the harm caused by improper trading. In particular, given a set of investors who purchased mutual fund shares during a particular period, the harm suffered by those investors is likely to be at least roughly proportional to their average dollar holdings.

12.    Importantly, this metric can be computed from information that is readily available. Specifically, one can compute an investor's average dollar holdings from the trading records of the individual investor and from daily NAVs for the fund(s) he or she holds.

13.    Average dollar holdings is somewhat different from measures of financial interest typically employed in securities fraud litigation. In particular, this metric is not driven by (unexpected) changes in prices such as might occur in response to the disclosure of

DECLARATION OF MARC VELLRATH, Ph.D., CFA                    *Page 5*

(fraudulently) concealed information. This is because the harm to a longer-term investor caused by improper trading does not flow from any particular change in pricing. Instead, the harm flows from the skimming off of investment earnings and from other drains on fund resources which occur over time, whether prices are rising or falling.

14.    While average dollar holdings measures exposure to the harm caused by timing and late trading, one should not interpret this metric as a measure of damages. Damages will also depend on the "extent" of the timing and late trading activity to which an investor is exposed in each particular fund, and possibly on other factors as well.

15.    At the request of attorneys at Milberg Weiss, I have computed average dollar holdings for the lead plaintiff movants in the Massachusetts Actions (as defined in the accompanying memorandum). To enable me to do this, Milberg Weiss provided data on purchases and sales of Columbia mutual funds by the Columbia Funds Lead Plaintiff Movants during the class period. I then gathered daily NAVs for the Columbia mutual funds in which these movants had invested from public sources.

## CONCLUSION

16.    I report the results of my computations, in summary form, in this paragraph and in Exhibits 2 and 3 to this declaration.[10] As shown in Exhibit 2, based on the data referred to above, the Columbia Funds Lead Plaintiff Movants held approximately $498,600 in Columbia mutual funds on an average day during the class period. Exhibit 3 lists the average dollar holdings of the five Columbia Funds Lead Plaintiff Movants with the largest exposure to the harm caused by timing and/or late trading (i.e., average dollar holdings during the class period);

---

[10] I report only "average dollar holdings." One can compute dollar days of holdings by multiplying average dollar holdings by 1,796, which is the number of days in the class period.

these amounts range from approximately $4,900 to approximately $436,300 on average each day during the entire class period.

17.     This declaration reflects my findings and opinions as of April 13, 2004. My analysis is on going and my findings and opinions may change or be supplemented if additional information relevant to the issues, which I address in this declaration, comes to my attention. If I am asked to testify as to my findings and opinions in this matter, I may prepare additional supporting materials related to my findings and opinions, such as summaries, graphical exhibits or charts.

Dated: April 13, 2004
Emeryville, California

_____
Marc Vellrath

DECLARATION OF MARC VELLRATH, Ph.D., CFA                                  *Page 7*



# EXHIBIT 1

## RESUME OF MARC VELLRATH, PH.D., CFA

Marc Vellrath is an economist and financial analyst, and a Founding Principal of KeyPoint Consulting LLC. Over twenty-five years as a business consultant, Mr. Vellrath has prepared numerous consulting and expert reports involving a variety of economic and financial issues in many different industries, including computer hardware and software, semiconductors, business equipment, telecommunications, pharmaceuticals, medical equipment, banking, investments, insurance, real estate, construction and energy. He has testified before state and federal courts throughout the United States, primarily on damages, and also before arbitration panels and state regulatory agencies. Mr. Vellrath's experience includes:

- Analysis of damages in disputes involving antitrust, patent infringement, copyright infringement, theft of trade secrets, contract breaches, fraud and fraudulent conveyance, breaches of fiduciary duty and a variety of business torts;

- Analysis of accounting, financial, and economic data to explain past business performance (including business failures and bankruptcies) and to quantify lost profits;

- Preparation of economic forecasts and financial projections (e.g., to quantify future lost profits);

- Analysis of the financial capabilities and credit-worthiness of applicants for commercial, real estate, and construction loans;

- Analysis of the strategies, operations, lending practices and loan-work-out practices of commercial banks and other financial institutions;

- Preparation of strategic plans, marketing plans, feasibility studies, valuations, and various other studies to improve management decision-making; and

- Evaluation of analyses, studies and reports prepared by others in the areas listed above.

Mr. Vellrath received his M.S. and Ph.D. in economics from Carnegie Mellon University and his B.A. from the University of Pennsylvania. He also holds an M.B.A. from the University of Washington and has earned the Chartered Financial Analyst (CFA) designation. Previously, Mr. Vellrath was a Principal and Vice President of Analysis Group, Inc., and a Senior Economist in the West Region Management Consulting Group of Ernst & Young. For a total of eight years, Mr. Vellrath was a member of the faculty at New York University's Graduate School of Business and at the University of Washington's Graduate School of Business. He also has taught in loan officer training programs at Chemical Bank of New York and Morgan Guaranty Trust Company.

*Marc Vellrath, Ph.D., CFA*

## DEPOSITION AND TRIAL TESTIMONY

CALIFORNIA SUPERIOR COURT, COUNTY OF RIVERSIDE
Medicus Formulas, Inc. at al. v. Thane, Inc., et al.
> Deposition testimony on damages. (August 2003)

SUPERIOR COURT OF GUAM
International Insurance Underwriters, Inc., at al. v. Takagi & Associates, Inc., et al.
> Trial testimony on the market effects of certain pricing practices in the market for commercial brokerage services in Guam. (June 2003)

U.S. DISTRICT COURT, DISTRICT OF NEW JERSEY
Joseph Grazel, M.D., v. St. Jude Medical, Inc., et al.
> Deposition testimony on commercial success of patented improvements in a medical device (vascular closure devices). (April 2003)

U.S. DISTRICT COURT, DISTRICT OF ARIZONA
Southwest Pet Products, Inc., at al. v. Koch Industries, et al.
> Deposition testimony on damages, including added costs and lost profits, arising from contamination and recall of premium pet foods. (January 2003)

AMERICAN ARBITRATION ASSOCIATION
Miller-Thompson Constructors, Inc. v. Lucas Marine Construction, Inc.
> At an arbitration hearing, testimony responding to a claim for diminished value of goodwill arising from an alleged wrongful termination of a marine construction contract. (September 2002)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
ATS Products, Inc. v. Shea Technology LLC et al.
> Deposition testimony on financial issues arising from alleged breach of a "most favored licensee" clause in a technology license. (October 2002)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
Atmel Corporation v. Silicon Storage Technologies, Inc.
> Deposition and trial testimony on price erosion damages arising from alleged infringement of patents disclosing technology used in non-volatile memory devices. (December 2001; April 2002)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF ALABAMA
Intergraph Corporation v. Intel Corporation
> Deposition testimony on lost profits, lost going concern value, and reliance damages arising from alleged fraud, suppression of material facts, breach of warranty, interference with business relationships, and related business torts. (January 2002)

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                    *Page 2*

*Marc Vellrath, Ph.D., CFA*

U.S. DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK
Geneva Pharmaceuticals Corp. as successor in interest to Invamed, Inc. v. Barr Laboratories, Inc., et al., and Apothecon, Inc. v. Barr Laboratories, Inc., et al.
> Deposition testimony on antitrust damages arising from alleged efforts to delay a manufacturer's launch of a competing generic product. (July 2001)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF TEXAS
Overhead Door Corporation v. The Chamberlain Group
> Deposition testimony on reasonable royalties and lost profits damages arising from alleged infringement of a patent disclosing coding technology used in garage door openers. (November 2000)

CALIFORNIA SUPERIOR COURT, STANISLAUS COUNTY
Hamilton v. Delta National Bank
> Deposition testimony on financial issues and damages in a lender liability lawsuit. (March 2000)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
Trend Micro Inc. v. Network Associates, Inc.
> Deposition testimony on reasonable royalties and lost profits arising from alleged infringement of a software patent. (February 2000)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO
Willis v. J.G. Wentworth Structured Settlement Funding Corporation
> Deposition testimony on the nature and characteristics of certain financial transactions involving payment streams derived from structured settlements. (August 1999)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO
Tangtrongsakdi v. Bangkok Metropolitan Bank
> Deposition testimony on the structure and economic substance of a complex real estate financing transaction and on the effects of alleged irregularities in a lender's loan processing procedures and loan documentation. (August 1999)

U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
Symantec Corporation v. McAfee Associates, Inc.
> Deposition testimony on benefits gained through infringing use of copyrighted software code and on profits gained through alleged wrongful use of a competitor's customer list. (August 1998)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO
ATS Products, Inc. v. Fab-Tech, Inc.
> Deposition testimony on profits lost as a result of a competitor's alleged false advertising. (August 1998)

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                    *Page 3*

*Marc Vellrath, Ph.D., CFA*

**CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO**
Katz v. Karmouche
> Trial testimony on business income lost by a partner in a law firm because of injuries sustained in an automobile accident. (January 1998)

**U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
Kopies, Inc., et al. v. Eastman Kodak Company
> Deposition testimony on antitrust damages to end-users of high-volume copiers arising from a manufacturer's refusal to sell parts to independent service organizations and from other anti-competitive behavior. (April 1997)

**CALIFORNIA SUPERIOR COURT, ALAMEDA COUNTY**
Murillo v. Kraus
> Deposition testimony on past and future lost income. (November 1996)

**CALIFORNIA SUPERIOR COURT, CONTRA COSTA COUNTY**
Central Credit Services (for Motorola) v. Tempo Personal Communications of California
> Deposition testimony on amounts due under personal guarantees of business debts. (March 1996)

**U.S. DISTRICT COURT, NORTHERN DISTRICT OF TEXAS**
Richie v. American Council on Gift Annuities
> In deposition and at a hearing on class certification, testimony on methods of calculating class-wide antitrust and other damages arising from the illegal sale of annuities and trust services. (August 1995; September 1995)

**CALIFORNIA SUPERIOR COURT, SAN FRANCISCO COUNTY**
Lina Lum dba Foto 45 v. Agfa Copal
> Deposition testimony on the financial condition of a group of photo-finishing shops. (March 1995)

**ILLINOIS CIRCUIT COURT, COOK COUNTY**
JMB Realty Corporation v. Cadillac Fairview
> Deposition and trial testimony on damages to a real-estate asset-management firm arising from breach of a long-term contract for real estate advisory services. (February 1995; March 1995)

**AMERICAN ARBITRATION ASSOCIATION, SAN FRANCISCO**
Chaminade, Ltd. v. The Owl Companies
> Testimony, in deposition and at an arbitration hearing, on increased energy costs incurred by a hotel/conference center as a result of alleged negligence, misrepresentation and breach of contract by the developer and operator of an energy cogeneration facility. (March 1995)

---

*Marc Vellrath, Ph.D., CFA*

MASSACHUSETTS SUPERIOR COURT, SUFFOLK COUNTY
Vappi & Company v. U.S. Trust
> Deposition and trial testimony assessing the reasonableness of a lender's financial analysis of a failed high-rise condominium project. (September 1993)

U.S. DISTRICT COURT, DISTRICT OF NEVADA
Twin Cities Insurance Company v. Seeno Construction Company
> Deposition and trial testimony on damages to a large regional developer/homebuilder caused by an insurance company's refusal to pay a significant claim. (January 1993; September 1993)

DISTRICT COURT, DALLAS COUNTY, TEXAS
Trammel Crow Company v. Peterson
> Deposition testimony related to accounting and valuation issues arising in a dispute among partners of the one of the country's largest real estate developers. (March 1993)

CALIFORNIA SUPERIOR COURT, SONOMA COUNTY
Maron v. AMCO Insurance Company
> Deposition testimony as to the financial condition of a restaurant and delicatessen at the time of a fire that destroyed the restaurant premises. (December 1992)

CALIFORNIA SUPERIOR COURT, SONOMA COUNTY
Wadell Engineering v. Hodges & Shutt
> Trial testimony on damages resulting from loss of a contract to perform airport engineering services allegedly caused by a competitor's tortious interference with prospective business advantage. (March 1992)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO
RTR Trading Company v. The Sharper Image
> Deposition testimony on damages to an international trading company arising from a specialty retailer's decision to cancel an allegedly non-cancelable order for 10,000 units of a home burglar alarm. (October 1991)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN FRANCISCO
Sprincin Company v. Security Pacific National Bank
> Deposition and trial testimony on damages to a developer arising from a bank's alleged failure to fulfill terms of a contract to sell land to the developer and provide construction financing. (September 1990; April 1991)

U.S. DISTRICT COURT, DISTRICT OF NEVADA
Boreta v. Hiller Enterprises
> Deposition testimony on losses suffered by an investor in an unsuccessful venture to franchise a restaurant chain. (October and December 1990)

---

U.S. DISTRICT COURT, EASTERN DISTRICT OF NEW YORK
Long Island Lighting Company v. General Electric Company
> Deposition testimony related to calculation of additional overhead costs, escalation costs and financing costs attributable to alleged errors in design of a containment vessel for the Shoreham Nuclear Power Plant. (September 1990)

CALIFORNIA SUPERIOR COURT, COUNTY OF SAN MATEO
Key Investors v. American Savings and Loan Association
> Deposition testimony on (i) causes of the failure of a project to renovate and lease an office building, (ii) the value of a lender's workout concessions, and (iii) the magnitude of losses suffered by the project's developers. (February 1990)

CALIFORNIA SUPERIOR COURT, ORANGE COUNTY
J.W. Mitchell Company v. Boral Industries
> Deposition and trial testimony on damages arising from breach of a contract for the purchase and sale of a rock quarry. (January 1990; February 1990)

CALIFORNIA SUPERIOR COURT, SACRAMENTO COUNTY
Los Rios Community College District v. County of Sacramento
> Testimony, in deposition and at a mini-trial, on sampling procedures and accounting issues arising from the County's management of a pooled investment fund and on proper allocation of interest earned by the fund among pool participants. (June 1989; February 1990)

U.S. DISTRICT COURT, SAN FRANCISCO
Boeing Construction (Boecon) v. Catalytic
> Deposition testimony on statistical issues in the analysis of data on productivity of workers during construction of a power plant, in response to a contractor's claim for damages caused by disruption and forced acceleration. (February 1989)

CALIFORNIA SUPERIOR COURT, SACRAMENTO
Huston Enterprises v. Tri-C Machine Shop
> Deposition testimony on profits lost by a manufacturer of tire-shredding equipment when a machine shop failed to complete design and fabrication of a prototype tire-shredder. (August and September 1987)

CALIFORNIA SUPERIOR COURT, EL DORADO COUNTY
Kirk Corporation v. First American Title Insurance Company
> Deposition testimony on the effects of repeated refinancings and related fees and costs on the financial viability of a condominium/time-share project at a Lake Tahoe ski resort. (August 1987)

DECLARATION OF MARC VELLRATH, Ph.D., CFA    *Page 6*

*Marc Vellrath, Ph.D., CFA*

CALIFORNIA SUPERIOR COURT, BUTTE COUNTY
King Industries v. Central Bank

Deposition testimony on the accounting practices and financial condition of a construction-and-mining-equipment salvage company and on the causes of the firm's bankruptcy. (May 1987)

## SELECTED ADDITIONAL LITIGATION CASEWORK

ANTITRUST

For class certification purposes, investigated methods of calculating antitrust and other damages arising from the alleged monopolization of the market for inside wire maintenance services.

Constructed and analyzed a database of sales, rental and service transactions for high-volume copiers and printers to identify effects and consequences of alleged anti-competitive behavior on the profitability of independent service organizations

BANKING

In support of a leading academic expert on banking, managed investigations of economic and financial issues arising in several "Winstar" banking cases. Responded to three expert reports asserting that changes in regulatory treatment of goodwill caused significant harm to the plaintiff financial institutions.

Retained by attorneys for directors and officers of a large commercial bank to respond to claims of mismanagement and imprudent lending, alleged to have caused more than $200 million in losses. Reviewed all aspects of the bank's relationship with its largest borrower, including financial strength of the borrower, collateral for loans, review and approval of loan applications, appraisal policies and procedures, and restructuring of loans.

Retained by attorneys for directors and officers of a large commercial bank to respond to claims of mismanagement and imprudent lending, alleged to have caused $325 million in losses. Analyzed fourteen major lending relationships and certain transactions between the bank and its parent holding company, including sale of a trust business, allegedly excessive dividend payments, and allegedly excessive charges for data processing services.

Investigated the adequacy of the "due diligence" undertaken by two financial institutions and an electrical contractor prior to their separate decisions to invest in a telecommunications supply and installation company.

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                                    *Page 7*

*Marc Vellrath, Ph.D., CFA*

Conducted more than thirty investigations of claims for damages arising in lender liability lawsuits against commercial banks and savings and loans.

## BANKRUPTCY/FRAUDULENT CONVEYANCE

Retained by attorneys for the owners of two bankrupt companies accused of stripping assets from the companies just prior to their collapse. Investigated the companies' strategies, performance, and outlook at various critical points, and analyzed the nature and timing of shifts in conditions in the recreational boating industry during the years preceding the failure of the two companies.

Led a team including four academic economists retained by a federal financial regulatory agency to investigate all aspects of the failure of a large commercial bank and to respond to charges by holding company bondholders that regulatory agencies arranged the fraudulent conveyance of holding company assets to the bank.

## REAL ESTATE AND CONSTRUCTION

Retained by attorneys for a general contractor's bonding company to respond to a developer's claim of lost profits caused by delays, disruption, added costs and stigma allegedly caused by the general contractor's errors, mismanagement, walk-off and eventual bankruptcy.

Working with a team of accountants and engineers, provided economic analysis related to calculation of additional overhead costs, escalation costs and financing costs attributable to alleged errors in design of a containment vessel for two nuclear power plants.

Investigated the evolution of environmental regulations in California from 1970 to the present to quantify the impact of changes in enforcement of these regulations on the value of contaminated light-industrial property in Southern California.

Investigated accounting and valuation issues in a dispute between the country's largest real estate development company and one of its senior partners, with ownership interests in more than 2,000 real estate project partnerships nationwide. Also analyzed the structure and effects of a $426 million refinancing of 161 commercial properties located throughout the Southwestern U.S.

## INTELLECTUAL PROPERTY

Estimated reasonable royalties and lost profits damages arising from alleged infringement of patents disclosing technology used in heart valves and rings.

Estimated reasonable royalties and lost profits damages arising from alleged infringement of patents covering technology used in non-volatile memory devices.

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA

*Marc Vellrath, Ph.D., CFA*

Estimated reasonable royalties arising from alleged infringement of a patent disclosing technology used in flat panel displays for control of office equipment.

Constructed and analyzed a database of documents and records pertaining to licensing and usage of mainframe software products by a large data processing and outsourcing firm. Responded to claims that the data processing firm perpetrated a massive scheme to misappropriate software. Also calculated damages arising from alleged anti-competitive behavior by the software company.

Responded to a claim for damages (including both lost profits and reasonable royalties) arising from alleged infringement of a patent disclosing a medical device used in non-invasive surgery.

Responded to a claim for reasonable royalty damages arising from alleged infringement of a patent protecting algorithms for encryption of sensitive data.

Investigated damages arising from theft of trade secrets by the former national sales director of a manufacturer and distributor of high-end leather garments.

MARKETING AND DISTRIBUTION

In support of a leading academic expert on telecommunications, investigated measures of the value of a wireless reseller's subscribers.

Working with a leading academic expert on marketing, managed an investigation of the effects of reconfiguration of store layouts on retail sales.

Constructed and analyzed a database of order-and-delivery records to determine whether a distributor of computer-related and electronic products met response time requirements in a distribution agreement.

Responded to a vendor's claim for damages arising from a retailer's termination of a supply contract due to poor product quality and high return rates.

Working with a leading academic expert on distribution systems, managed an investigation of a distributor's compliance with certain contractual obligations to fill orders and deliver computer-related goods within specified time limits.

**SELECTED (NON-LITIGATION) CONSULTING CASEWORK**

Led a team of consultants providing assistance on a broad range of operational and strategic issues to a rapidly growing design and construction firm. Assignments included restructuring operations to support future growth, revamping reporting and management

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                                    *Page 9*

*Marc Vellrath, Ph.D., CFA*

support systems, implementing a planning and budgeting process, and preparing business plans for several new ventures.

Led a team of consultants preparing product-development strategies for a low-cost internet-access device. Conducted market research to assess consumers' willingness-to-pay for the device and for information services accessible via the device, and prepared projections of cash flows for the project under various scenarios.

Valued a lessor's interests in a portfolio of long-term ground leases to assist owners of condominiums in negotiating a buy-out of the leases.

Investigated the impact of clean-fuel regulations on the costs and competitive position of a mid-size oil refiner. Testified at hearings held by a state regulatory agency.

Analyzed conditions in Canadian financial markets and prepared a rate-of-return study for a Canadian natural-gas-pipeline company to assist the company in establishing tariffs for transportation services.

Multiple engagements related to financial management of a fourteen-year project to develop a disposal site for low-level radioactive waste in California. Designed and implemented a system for monitoring costs of engineering and environmental studies and public-relations efforts to comply with state regulations. Recommended pricing strategies to provide a reasonable return on investment for the developer/operator of the facility. Prepared a report on the prudence and reasonableness of certain costs incurred to select a site and develop the facility.

Conducted surveys of users of personal computers and analyzed other data sources to quantify the benefits flowing from the company's $70 million investment in personal computers. Identified constraints limiting benefits of PC-use and recommended ways to increase returns on existing and future investments in personal computers.

Led a team of consultants helping to plan the introduction of a family of innovative LAN bridger/routers for data communications networking. Developed a financial model to generate cash flow projections for the products under alternative scenarios.

Reviewed operations, procedures and program requirements to improve management of this agency's Health Facility Mortgage Insurance Program and assess the solvency of the agency's Health Facility Construction Loan Insurance Fund.

Prepared an economic analysis and financial projections for a large geothermal energy plant to assess the ability of the project's sponsor to repay partial funding of the project by the State of California.

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA                    *Page 10*

*Marc Vellrath, Ph.D., CFA*

Managed feasibility studies of 40 energy-development projects and assessments of the creditworthiness, financial strength and management capabilities of the projects' sponsors. Technologies used by the projects included compressed air energy storage; methanol-fueled cogeneration-turbines; low-head hydroelectric power generation; and solar electric/thermal hybrid power-and-hot-water-heating systems.

Prepared a business plan for development and marketing of a computer system to provide fast and efficient access to comprehensive, up-to-date information needed by mechanics repairing automobiles. Assisted in negotiations with venture capital firms to secure $4.5 million in financing for product development and test marketing.

Prepared economic evaluations and feasibility studies of municipal energy projects, including both large-scale and modular waste-to-energy facilities.

## PUBLICATIONS

None in the past ten years.

## COMPENSATION

KeyPoint's standard fee for Mr. Vellrath's services, including testimony in deposition and at trial, is $415 per hour plus out-of-pocket expenses.

## BUSINESS ADDRESS AND CONTACT INFORMATION

Marc Vellrath, Ph.D., CFA
KeyPoint Consulting LLC
2000 Powell Street, Suite 500
Emeryville, California 94608

phone: 510-594-8100 ext. 14
fax: 510-594-8105
email: mvellrath@keypointconsulting.com

---

DECLARATION OF MARC VELLRATH, Ph.D., CFA



*Marc Vellrath, Ph.D., CFA  --  SUPPLEMENT*

## DETAILED EMPLOYMENT HISTORY

| | |
|---|---|
| September 1996 to present | Founding Principal<br>KeyPoint Consulting LLC, Emeryville, CA |
| September 1990 - August 1996 | Vice President and Principal<br>Analysis Group, Inc., San Francisco |
| January 1986 - August 1990 | Senior Economist<br>West Region Management Consulting Group<br>Ernst & Young, Sacramento and San Francisco |
| September 1985 - December 1985 | Contract Consultant, Financial Research  (part-time)<br>Frank Russell Company, Tacoma, WA |
| September 1983 - August 1985 | Assistant Professor, Finance and Business Economics<br>University of Washington, Seattle |
| September 1977 - August 1983 | Instructor, Graduate School of Business Administration<br>New York University |
| September 1981 - August 1982 | Visiting Lecturer, Finance and Business Economics<br>University of Washington, Seattle |
| September 1977 - August 1981 | Lecturer, Bank Officer Training Programs  (part-time)<br>Morgan Guaranty Trust Company, New York<br>Chemical Bank, New York |

## TEACHING EXPERIENCE

Business economics                    Security analysis and portfolio management
Monetary economics                    Corporate financial management
Money and banking

## EDUCATION

| | | |
|---|---|---|
| 1983 | Ph.D., Economics | Carnegie Mellon University, Pittsburgh, PA |
| 1976 | M.S., Economics | Carnegie Mellon University, Pittsburgh, PA |
| 1974 | M.B.A., Business Economics | University of Washington, Seattle, WA |
| 1972 | B.A., History | University of Pennsylvania, Philadelphia, PA |

## PROFESSIONAL CERTIFICATION

1987   Chartered Financial Analyst (CFA)   Institute of Chartered Financial Analysts

**EXHIBIT 2**

**Holdings in Funds by Columbia Funds Lead Plaintiff Movants**

| Fund | | Amount Invested | |
|------|--|-----------------|--|
| | | Daily Averages During Class Period | |
| Fund Name | Ticker | Shares | Dollar Value |
| Columbia Acorn Fund C | LIACX | 151 | $ 2,615 |
| Columbia Acorn Fund Z | ACRNX | 1,026 | 18,381 |
| Columbia Acorn Fund B | LACBX | 309 | 5,296 |
| Columbia Acorn Select C | LTFCX | 135 | 2,300 |
| Columbia Acorn Select Z | ACTWX | 2,195 | 35,812 |
| Columbia Common Stock Fund B | CMSBX | 44 | 756 |
| Columbia Common Stock Fund A | CMSAX | 1,669 | 27,227 |
| Columbia Fixed Income Securities Fund | CFIAX | 890 | 12,045 |
| Columbia Growth & Income Fund B | CFGBX | 414 | 6,012 |
| Columbia Growth & Income Fund B | LGISX | 520 | 7,174 |
| Columbia Growth Fund Z | CLMBX | 1,466 | 38,488 |
| Columbia High Yield Fund | CHGAX | 1,442 | 12,327 |
| Columbia International Stock Fund A | CISAX | 5,580 | 60,972 |
| Columbia International Stock Fund Z | CMISX | 1 | 8 |
| Columbia Large Cap Core Fund | SGIEX | 146 | 1,622 |
| Columbia Large Cap Growth | GBEGX | 16 | 278 |
| Columbia Large Company Index | LLIAX | 70 | 1,781 |
| Columbia Liberty Fund | COLFX | 111 | 821 |
| Columbia Midcap Value Fund | COLGX | 2,547 | 53,201 |
| Columbia Newport Greater China Fund | NGCAX | 9 | 172 |
| Columbia Real Estate Equity Fund Z | CREEX | 15 | 291 |
| Columbia Short Term Bond Fund | CTBAX | 103 | 898 |
| Columbia Small Cap Fund | LSMAX | 1,327 | 19,102 |

*Continued*

**EXHIBIT 2**

**Holdings in Funds by Columbia Funds Lead Plaintiff Movants**

| Fund | | Amount Invested | |
| --- | --- | --- | --- |
| | | Daily Averages During Class Period | |
| Fund Name | Ticker | Shares | Dollar Value |
| Columbia Strategic Investor Fund | CSVAX | 11,912 | 175,801 |
| Columbia Strategic Value Fund Z | CSVFX | 5 | 67 |
| Columbia Technology Fund | CTCAX | 4 | 23 |
| Columbia Utilities Class A | CUTLX | 152 | 1,492 |
| Liberty Acorn International Z | ACINX | 58 | 895 |
| Liberty Acorn Trust | LACAX | 123 | 2,113 |
| Liberty Acorn USA | LAUBX | 28 | 498 |
| Liberty Intermediate Bond Fund | LIBBX | 45 | 408 |
| Liberty Small Cap Fund Z | SMCEX | 308 | 4,124 |
| Liberty Tax-Managed Growth Fund Z | LMGZX | 508 | 5,550 |
| Totals, All Funds | | 33,326 | $    498,550 |

Notes:
1/ On October 13, 2003, all Liberty funds were renamed Columbia funds.
2/ I reserve the right to revise and supplement the information provided herein.

DECLARATION OF MARC VELLRATH, Ph.D., CFA

**EXHIBIT 3**

**Holdings in Funds by Columbia Funds Lead Plaintiff Movants**

**Five Largest by Average Dollar Holdings**

| Movant's Name | Amount Invested<br>On an Average Day During Class Period | |
|---|---|---|
| Williams, Jackie | $ | 436,301 |
| Kemp, Robert | | 16,583 |
| Berkely, Edward | | 8,044 |
| Nelson, Paul H. | | 6,564 |
| Virtuoso, John | | 4,940 |
| Total, Five Largest Movants | $ | 472,432 |

Note 1: I reserve the right to revise and supplement the information provided herein.