**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

CATHERINE DUKES, Individually and On Behalf of All Others Similarly Situated,
Plaintiff,

vs.

COLUMBIA ACORN FUND, COLUMBIA ACORN SELECT, COLUMBIA ACORN USA, COLUMBIA ASSET ALLOCATION FUND, COLUMBIA BALANCED FUND. COLUMBIA COMMON STOCK FUND, COLUMBIA DISCIPLINED VALUE FUND, COLUMBIA DIVIDEND INCOME FUND, COLUMBIA GROWTH & INCOME FUND, COLUMBIA GROWTH FUND, COLUMBIA GROWTH STOCK FUND, COLUMBIA LARGE CAP CORE FUND, COLUMBIA LARGE CAP GROWTH FUND, COLUMBIA LARGE COMPANY INDEX FUND, COLUMBIA LIBERTY FUND, COLUMBIA MID CAP GROWTH FUND, COLUMBIA MID CAP VALUE FUND, COLUMBIA REAL ESTATE EQUITY FUND, COLUMBIA SMALL CAP FUND, COLUMBIA SMALL CAP VALUE FUND, COLUMBIA SMALL COMPANY EQUITY FUND, COLUMBIA SMALL COMPANY INDEX FUND, COLUMBIA STRATEGIC INVESTOR FUND, COLUMBIA TAX-MANAGED AGGRESSIVE GROWTH FUND, COLUMBIA TAX-MANAGED

Civil Action
No. 1:04-cv-10315-PBS

Related Actions:
1:04-cv-10355-PBS
1:04-cv-10405-PBS
1:04-cv-10408-PBS
1:04-cv-10534-PBS
1:04-cv-10555-MLW
1:04-cv-10567-MEL
1:04-cv-10603-PBS

**Caption Continues On Next Page**

**MEMORANDUM OF LAW OF DERIVATIVE PLAINTIFFS IN OPPOSITION TO THE MOTIONS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPOINTMENT OF STEERING COMMITTEE, AND APPROVAL OF SELECTION OF LEAD COUNSEL, COORDINATING COUNSEL, AND LIAISON COUNSEL**

GROWTH FUND, COLUMBIA TAX-MANAGED :
GROWTH FUND II, COLUMBIA TAX- :
MANAGED VALUE FUND, COLUMBIA :
TECHNOLOGY FUND, COLUMBIA :
THERMOSTAT FUND, COLUMBIA UTILITIES :
FUND, COLUMBIA YOUNG INVESTOR FUND, :
COLUMBIA ACORN INTERNATIONAL FUND, :
COLUMBIA ACORN INTERNATIONAL :
SELECT FUND, COLUMBIA EUROPE FUND, :
COLUMBIA GLOBAL EQUITY FUND, :
COLUMBIA INTERNATIONAL EQUITY FUND, :
COLUMBIA INTERNATIONAL STOCK FUND, :
COLUMBIA NEWPORT ASIA PACIFIC FUND, :
COLUMBIA NEWPORT JAPAN :
OPPORTUNITIES FUND, COLUMBIA :
NEWPORT GREATER CHINA FUND, :
COLUMBIA NEWPORT TIGER FUND, :
COLUMBIA CONTRARIAN INCOME FUND, :
COLUMBIA CORPORATE BOND FUND, :
COLUMBIA FEDERAL SECURITIES FUND, :
COLUMBIA FIXED INCOME SECURITIES :
FUND, COLUMBIA FLOATING RATE :
ADVANTAGE FUND, COLUMBIA FLOATING :
RATE FUND, COLUMBIA HIGH YIELD FUND, :
COLUMBIA HIGH YIELD OPPORTUNITY :
FUND, COLUMBIA INCOME FUND, :
COLUMBIA INTERMEDIATE BOND FUND, :
COLUMBIA INTERMEDIATE GOVERNMENT :
INCOME FUND, COLUMBIA MONEY MARKET :
FUND, COLUMBIA QUALITY PLUS BOND :
FUND, COLUMBIA SHORT TERM BOND :
FUND, COLUMBIA STRATEGIC INCOME :
FUND, COLUMBIA US TREASURY INDEX :
FUND, COLUMBIA CALIFORNIA TAX- :
EXEMPT FUND, COLUMBIA CONNECTICUT :
INTERMEDIATE MUNICIPAL BOND, :
COLUMBIA CONNECTICUT TAX-EXEMPT :

**Caption Continues on Next Page**

FUND, COLUMBIA FLORIDA INTERMEDIATE :
MUNICIPAL BOND FUND, COLUMBIA HIGH :
YIELD MUNICIPAL FUND, COLUMBIA :
INTERMEDIATE TAX-EXEMPT BOND FUND, :
COLUMBIA MANAGED MUNICIPALS FUND, :
COLUMBIA MASSACHUSETTS :
INTERMEDIATE MUNICIPAL BOND FUND, :
FUND, COLUMBIA MUNICIPAL MONEY :
MARKET FUND, COLUMBIA NATIONAL :
MUNICIPAL BOND FUND, COLUMBIA NEW :
JERSEY INTERMEDIATE MUNICIPAL BOND :
FUND, COLUMBIA NEW YORK :
INTERMEDIATE MUNICIPAL BOND FUND, :
COLUMBIA NEW YORK TAX-EXEMPT FUND, :
COLUMBIA OREGON MUNICIPAL BOND :
FUND, COLUMBIA PENNSYLVANIA :
INTERMEDIATE MUNICIPAL BOND FUND, :
COLUMBIA RHODE ISLAND INTERMEDIATE :
MUNICIPAL BOND FUND, COLUMBIA TAX- :
EXEMPT FUND, COLUMBIA TAX-EXEMPT :
INSURED FUND, COLUMBIA SMALL CAP :
GROWTH FUND, COLUMBIA EUROPEAN :
THEMATIC EQUITY FUND, COLUMBIA :
GLOBAL THEMATIC EQUITY FUND, :
COLUMBIA DAILY INCOME COMPANY FUND:
(collectively known as "COLUMBIA FUNDS"); :
COLUMBIA ACORN TRUST, COLUMBIA :
BALANCED FUND INC./OR, COLUMBIA :
COMMON STOCK FUND INC., COLUMBIA :
DAILY INCOME COMPANY, COLUMBIA :
FIXED INCOME SECURITIES FUND INC., :
COLUMBIA FLOATING RATE ADVANTAGE :
FUND, COLUMBIA FLOATING RATE FUND, :
COLUMBIA FUNDS TRUST I, COLUMBIA :
FUNDS TRUST II, COLUMBIA FUNDS TRUST :
III, COLUMBIA FUNDS TRUST IV, COLUMBIA :
FUNDS TRUST IX, COLUMBIA FUNDS TRUST :
V, COLUMBIA FUNDS TRUST VI, COLUMBIA :
FUND INC., COLUMBIA OREGON MUNICIPAL:
BOND FUND INC., COLUMBIA NATIONAL :
MUNICIPAL BOND FUND INC., COLUMBIA :
REAL ESTATE EQUITY FUND INC., :

**Caption Continues On Next Page**

COLUMBIA SHORT TERM BOND FUND INC., COLUMBIA SMALL CAP GROWTH FUND FUNDS TRUST VII, COLUMBIA FUNDS TRUST VIII, COLUMBIA FUNDS TRUST XI, COLUMBIA GROWTH FUND INC., COLUMBIA HIGH YIELD FUND INC., COLUMBIA INSTITUTIONAL FLOATING RATE INCOME FUND, COLUMBIA INTERNATIONAL STOCK FUND INC., COLUMBIA MID CAP GROWTH INC., COLUMBIA STRATEGIC INVESTOR FUND INC., COLUMBIA TECHNOLOGY FUND INC. (collectively known as "COLUMBIA FUNDS REGISTRANTS"); FLEETBOSTON FINANCIAL CORPORATION; COLUMBIA MANAGEMENT GROUP, INC.; COLUMBIA MANAGEMENT ADVISORS, INC.; COLUMBIA WANGER ASSET MANAGEMENT, L.P.; COLUMBIA FUNDS DISTRIBUTOR, INC.; and JOHN DOES 1-100,

Defendants.

Plaintiffs David Armetta[1], George Slaybe and Pamela Yameen[2], and Edward I. Segel and Iris Segel[3] (the "Derivative Plaintiffs"), by and through their undersigned attorneys, hereby submit this Memorandum of Law in Opposition to the Motion of the Columbia Funds Lead Plaintiff Movants for Consolidation, Appointment As Lead Plaintiff, Appointment of Steering Committee, and Selection of Lead Counsel, Coordinating Counsel, and Liaison Counsel (the "Motion").

## INTRODUCTION

1 *Armetta v. Fleetboston Financial Corporation, et al.* (D.Mass.) C.A.No. 04-10555

2 *Slaybe et al v. Columbia Management Advisors, Inc.* (D.Mass.) C.A.No. 04-10534

3 *Segel et al v. Fleetboston Financial Corporation, et al* (D.Mass.) C.A.No. 04-10567

There are currently five class actions[4] (the "Class Actions") filed in the District of Massachusetts on behalf of overlapping putative classes of investors who purchased shares in mutual funds offered by subsidiaries of FleetBoston Financial Corporation (the "Columbia Funds") alleging claims under the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, and the common law. There are three derivative actions[5] (the "Derivative Actions") filed in the District of Massachusetts brought by the Derivative Plaintiffs on behalf of the Columbia Funds alleging claims under the Investment Company Act, the Investment Advisers Act, the Securities Exchange Act of 1934, and the common law. All of these actions (the "Massachusetts Actions") include allegations of "market timing" in the Columbia Funds, which is a practice whereby certain favored investors are permitted to make rapid in-and-out trades in mutual funds to the detriment of the mutual funds and shareholders. There are also at least four class actions pending in at least two other federal district courts involving market timing in the Columbia Funds.[6] All of the actions alleging market timing in the Columbia Funds are subject to an order of the Judicial Panel on Multidistrict Litigation (the "Panel") transferring actions involving

---

[4] *Dukes v. Columbia Acorn Fund, et al.* (D.Mass.) C.A.No. 04-10315; *AB Medical Equip. Corp. v. FleetBoston Financial Corp., et al.* (D.Mass.) 04-10355; *Ehrlich v. Columbia Acorn fund et al* (D.Mass.) 04-10405; *Wick et al v. Fleetboston Financial Corporation et al* (D.Mass.) 04-10408; *Caprio v. Columbia Acorn fund et al* (D.Mass.) 04-10603.

[5] *Armetta v. Fleetboston Financial Corporation, et al.* (D.Mass.) C.A.No. 04-10555; *Slaybe et al v. Columbia Management Advisors, Inc.* (D.Mass.) C.A.No. 04-10534; *Segel et al v. Fleetboston Financial Corporation, et al* (D.Mass.) C.A.No. 04-10567.

[6] *See e.g. McKenna v. Columbia Acorn Fund et al* (S.D.N.Y.) 04-1576; *Simmonds v. Columbia Acorn Fund et al.* (S.D.N.Y.) 04-01879; *Kelso v. Columbia Acorn Trust, et al.* (S.D.Ill.) 03-0769; *Vogeler, et al. v. Columbia Acorn Trust, et al.* (S.D.Ill.) 04-0843.

market timing to the District of Maryland[7] and all of the Massachusetts Actions have been identified as potential tag alongs to that Multidistrict Litigation[8].

Even though transfer is imminent, the Columbia Funds Lead Plaintiff Movants ("L.P. Movants") have filed a Motion requesting that this Court: (1) consolidate all actions pending in this District; (2) appoint the L.P. Movants as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act (the "PSLRA") with respect to all actions alleging claims under the Securities Exchange Act of 1934 and the Securities Act of 1933; (3) establish a steering committee to represent the proposed Lead Plaintiff; (4) appoint Milberg Weiss as both Lead Counsel under the PSLRA and as Coordinating Counsel of all actions in the District of Massachusetts; and (5) appoint Moulton & Gans as Liaison Counsel for the Class Actions.

The Derivative Plaintiffs oppose the L.P.Movants' Motion insofar as it attempts to: (1) appoint a Lead Plaintiff under the PSLRA to prosecute any Derivative Action; (2) consolidate the Derivative Actions with the Class Actions; (3) appoint Milberg Weiss as Coordinating Counsel with respect to both the Class Actions and Derivative Actions; and (4) establish an organizational structure for a market timing case outside of the Multidistrict Litigation pending in the District of Maryland.

First, both the Derivative Actions and the Class Actions will very likely be transferred in the near future by the Panel to the District of Maryland ("Maryland") for coordinated or consolidated proceedings with mutual fund actions currently pending in the In re Mutual Fund Litigation MDL 1586 ("MDL 1586"). MDL 1586 includes market timing cases involving at least seventeen mutual fund families that were all transferred to Maryland because of common

---

[7] *See* Feb 20, 2004 Order of the Judicial Panel on Multidistrict Litigation. Affadavit of Robert Hillman ("Hillman Affidavit") Exhibit 1.

[8] *See* Notice of Potential Tag-Along Actions submitted by defendants on April 9, 2004, Hillman Affidavit Ex. 2.

issues relating to market timing.[9] All of the Massachusetts Actions were noted as potential tag alongs to MDL 1586 and the Derivative Plaintiffs have no reason to believe that these cases will not be transferred. The transferee court will organize all of the transferred cases and the Honorable Frederick J. Motz is currently hearing Lead Counsel motions for MDL 1586. Accordingly, this Court should refrain from deciding any lead plaintiff, consolidation, or organizational issues pending the imminent transfer by the Judicial Panel on Multidistrict Litigation.

Second, the Derivative Actions are not subject to the Lead Plaintiff provisions of the PSLRA, and the actual and real conflicts of interest inherent in these actions prevent a class plaintiff or class counsel from prosecuting a Derivative Action. Therefore, the Court should not appoint a Lead Plaintiff under the PSLRA to prosecute the Derivative Actions and should not consolidate the Derivative Actions with any Class Action. These same conflicts of interest also militate against appointing Milberg Weiss as Coordinating Counsel with respect to both the Class Actions and Derivative Actions.

There is also another motion for appointment of lead plaintiff pending before this court submitted by the Bonelli Plaintiff Group, which requests that this court: (1) consolidate all Class Actions; (2) appoint the Bonelli Plaintiff Group to serve as lead plaintiffs; (3) appoint Schiffrin Barroway LLP as lead counsel for the Class Actions; and (4) appoint Gilman & Pastor LLP as liaison counsel for the Class Actions.

---

[9] All counsel seeking to be appointed as lead counsel under the PSLRA in MDL 1586 were ordered to file motions in the District of Maryland seeking such appointment by April 19, 2004. Although Derivative Plaintiffs are not subject to the PSLRA, in order to comply with the spirit of the Maryland District Court's order, Derivative Plaintiffs submitted a Motion and Memorandum of Law proposing an organizational structure for actions involving the Columbia Fund and other mutual fund families. The Memorandum of Law in Support of Derivative Plaintiffs' Motion for Entry of Pretrial Order Number One, which addresses organizational issues in connection with the In re Mutual Funds Litigation, is attached to Hillman Affidavit as Exhibit 3.

The Bonelli Plaintiff Group's Motion only seeks to affect one of the Derivative Actions, *Slaybe et al v. Columbia Management Advisors, Inc.* (D.Mass.) C.A.No. 04-10534. Specifically, the Bonelli Plaintiff Group mis-characterizes the *Slaybe* action as a Class Action and seeks consolidation with the Class Actions.[10] The *Slaybe* action is not a Class Action. Rather, the *Slaybe* action alleges one claim under Section 36(b) of the Investment Company Act of 1940. Section 36(b) permits an action to be brought by a shareholder "on behalf of [a registered investment company]." 15 U.S.C. § 80a-35(b). For the same reasons as enumerated above in opposition to the L.P. Movants' Motion, the Derivative Plaintiffs oppose the Bonelli Plaintiff Group's motion insofar as it attempts to: (1) consolidate the *Slaybe* Derivative Action with the Class Actions; and (2) establish an organizational structure outside of MDL 1586.

## ARGUMENT

### I. Coordination, Consolidation, and Lead Plaintiff Issues Will Be Most Efficiently Decided by the District of Maryland When These Case Are Transferred by the Panel

Since the Derivative Actions and Class Actions pending before this Court will very likely be transferred to the District of Maryland for coordination with over 200 cases involving at least seventeen different mutual fund families in MDL 1586, any consolidation or appointment of Lead Plaintiff, Lead Counsel, or Coordinating Counsel is best handled there. This will ensure the greatest efficiency both within the Columbia Funds actions and across actions in other mutual fund families.

Both the Class Actions and the Derivative Actions are subject to an Order of the Judicial Panel on Multidistrict Litigation transferring actions involving market timing to the District of

[10] The Bonelli Plaintiff Group does not seek consolidation of the *Segel* and *Armetta* Derivative Actions.

Maryland and have been identified as potential tag alongs to that Multidistrict Litigation. It is nearly a foregone conclusion that all of these cases will be transferred to the District of Maryland.

The District of Maryland has already established a case number and a "sub-track" for the Columbia Class and Derivative Actions in anticipation of the transfer of these actions for coordinated or consolidated proceedings, even though no action involving the Columbia Funds has officially been transferred yet.[11] Therefore, it is unnecessary for this Court to use its resources to hear and decide consolidation, appointment of Lead Plaintiffs, or appointment of Coordinating Counsel for the Massachusetts Actions as requested by the L.P. Movants and the Bonelli Plaintiff Group. Any coordination, consolidation, or appointment of Coordinating Counsel will be more effectively managed by the transferee court. These issues organizational have already been briefed in the District of Maryland and are awaiting decision by that Court.

## II. The Derivative Actions Are Not Subject To The Lead Plaintiff Provisions Of The PSLRA

The Derivative Actions are not subject to the lead plaintiff provisions of the PSLRA, which by its terms applies only to "each private action arising under [the Exchange Act] that is *brought as a plaintiff class action* pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) (emphasis added). Despite the fact that the L.P. Movants quote this exact language in their Memorandum of Law, they seek Lead Plaintiff status "with respect to all claims brought under the Securities Exchange Act of 1934 and the Securities Act of 1933," regardless of whether the claims are brought as class actions or not. *See Memorandum of Law in Support of Motion of Columbia Funds Lead Plaintiff Movants for Consolidation, Appointment as Lead*

[11] *See* April 9, 2004 Letter from Honorable Frederick J. Motz, Hillman Affidavit Ex. 4.

*Plaintiff, Appointment of Steering Committee, and Approval of Selection of Lead Counsel, Coordinating Counsel, and Liaison Counsel,* at 1, 9. This language is so broad as to potentially include the *Segel* Derivative Action, which asserts a claim under Section 10(b) of the Securites Exchange Act of 1934 *on behalf of the Columbia Funds*.

In addition to the fact that the L.P. Movants ignore the express limitation of the PSLRA Lead Plaintiff provisions to actions brought as Plaintiff Class Actions, they ignore the substantial differences between the nature of the claims involved. The Class Actions allege violations of Section 10(b) of the Securities Exchange Act based on fraud, deceit, and failures to disclose, in connection with the sale of *mutual fund shares* to investors. The *Segel* Derivative Action alleges violations of Section 10(b) of the Securities Exchange Act based on fraud and deceit in connection with the purchase and sale of *underlying securities* that comprise the assets of the mutual funds.

Similarly, the Bonelli Plaintiff Group ignores the fact that the *Slaybe* action was not brought as a class action and that it does not allege any claim under the Exchange Act. The Bonelli Plaintiff group mistakenly implies that the *Slaybe* action asserts claims "on behalf of purchasers or redeemers ... who purchased in reliance on the materially false and misleading statements."[12] In fact, the *Slaybe* action only brings one claim under Section 36(b) of the Investment Company Act of 1940 alleging that the Columbia Funds' investment adviser breached its' fiduciary duties in connection with the receipt of advisory fees. Section 36(b) authorizes claims by shareholders "on behalf of [a registered investment company]." Since the *Slaybe* action is not a class action and does not allege any Exchange Act claim, it is not subject to the Lead Plaintiff provisions of the PSLRA.

---

[12] *See* Memorandum of Law in Support of Motion of the Bonelli Plaintiff Group to Consoldiate Actions, to be Appointed Lead Plaintiffs and For Selection of Lead Counsel and Liaison Counsel, at 6.

Although the Derivative Plaintiffs take no position with respect to appointment of Lead Plaintiff in the Class Actions, the Derivative Plaintiffs oppose any attempt to apply the PSLRA Lead Plaintiff provisions to any Derivative Action.

**III. Class Plaintiffs And Class Counsel Are Not Able To Prosecute A Derivative Action Because Of Actual And Potential Conflicts Of Interest**

The Court should not appoint a Lead Plaintiff under the PSLRA to prosecute the Derivative Actions and should not consolidate the Derivative Actions with any Class Action because of the conflict of interest that obtain between the two types of action, claimants, and counsel.

An overwhelming majority of courts have held that there is an inherent conflict when class plaintiffs and their counsel simultaneously seek to prosecute securities fraud claims seeking damages *from* an entity and derivative claims seeking damages *on behalf of* that very same entity, as the Movants and their counsel seek to do here. In such circumstances, courts routinely refuse to permit class plaintiffs to assert derivative claims, and refuse to permit law firms to pursue both derivative and class claims on behalf of the same clients, or to represent separate derivative and class plaintiffs in the same case.

For example, in *Ryan v. Aetna Life Ins. Co.*, 765 F.Supp. 133 (S.D.N.Y. 1991), the court stated that "courts in this District have applied a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict," and found that a conflict existed where a plaintiff also sought to recover damages from the corporation on whose behalf he brought derivative claims. The court dismissed the case, pending plaintiff's election of either derivative or direct claims. *Id.* at 133.

Similarly, in *Brickman v. Tyco Toys, Inc.*, 731 F.Supp. 101, 108-09 (S.D.N.Y. 1990), the

court held that a class could not be certified, given the presence of derivative claims, unless the plaintiff "explain[ed] why potential conflicts are not likely to materialize." Because plaintiff could not show an absence of conflict, the court refused to certify a class "so long as plaintiff maintains his derivative action." *Id.* In *Kamerman v. Steinberg*, 113 F.R.D. 511 (S.D.N.Y. 1986), the court certified a class only after plaintiffs had abandoned their derivative claims.[13]

Indeed, in *Charal v. Andes*, 81 F.R.D. 99 (E.D. Pa. 1979), where the court similarly refused to certify a class because a putative class representative also had derivative claims, the court noted: "It is difficult to imagine a clearer conflict of interest." *Id.* at 101.

In *Koenig v. Benson*, 117 F.R.D. 330 (E.D.N.Y. 1987), for example, the court, citing counsel's conflict, refused to certify a class where counsel represented a plaintiff in a class and derivative capacity, holding:

> When a plaintiff brings a derivative suit seeking recovery for the corporation and simultaneously files a class suit for damages against that same corporation, there is an inherent conflict. One court has written, ***"it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation without compromising the independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests*****."** *Stull v. Baker*, 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976).

*Id.* at 334 (emphasis added).

Additionaly, courts consider the dual representation of class and derivative claims to be a

---

[13] Numerous cases are in accord: *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996); *Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 80 (N.D. Tex. 1984) (plaintiff is inadequate class representative when, "the representative has instituted both a derivative suit on behalf of the corporation and… [a] class action…"); *Stull v. Baker*, 410 F. Supp. 1326, 1136-37 (S.D.N.Y. 1976); *Caan v. Kane-Miller Corp.*, No. 71 Civ. 878, 1974 U.S. Dist. LEXIS 13019 (S.D.N.Y. Dec. 18, 1974) (individual and derivative actions may not be maintained simultaneously); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93 (S.D.N.Y. 1972) (class and derivative actions may not be pursued simultaneously).

violation of the attorney code of ethics. *See, e.g., Ruggiero v. American Bioculture, Inc.*, 56 F.R.D 93, 95 (S.D.N.Y. 1972) (ethical violation for same counsel to represent derivative and class plaintiffs); *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (counsel could not simultaneously prosecute a class action and a derivative action; different counsel was required).

A conflict of interest exists even where an attorney represents different plaintiffs in a class action and a derivative action. In *DeLeo v. Swirsky*, No. 00-C-6917, 2002 U.S. Dist. LEXIS 11905 (N.D. Ill. July 2, 2002), the court held that one lawyer could not represent a class plaintiff and a derivate plaintiff because the two actions might compel him to make inconsistent strategic and tactical decisions in the two cases. *Id.* at *2. The court explained:

> ***The importance of having a fair and adequate named plaintiff and attorney in a derivative suit cannot be overstated.*** In a derivative suit, the named plaintiff assumes a position of fiduciary character, taking into his hands not his claims alone, but also those of a class of individuals who are similarly situated. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50, 93 L.Ed. 1528, 69 S. Ct. 1221 (1949). All of the shareholders depend on the named plaintiff's and his attorney's diligence, wisdom, and integrity. Though shareholders can elect a director or manager, they have no such election with regard to who represents them in a derivative suit. *Id.* ***And unlike a class suit, shareholders have no ability to opt out of a derivative suit. Thus, all shareholders are bound by the outcome of the derivative suit regardless of their objections.*** *Gottlieb v. Wiles*, 11 F.3d 1004, 1011 (10th Cir. 1993).

*Id.* at *13-14 (emphasis added).

Similarly, in *Meeder v. Superior Tube Co.*, 72 F.R.D. 633 (W.D. Pa. 1976), the court declined to consolidate shareholder complaints when it appeared that there could be substantial differences between, *inter alia*, the class and derivative actions. The court stated:

> [W]hile the three complaints arise out of the same circumstances, that is, the tender offer by Superior, the defendants are not all common to all the cases; one complaint contains a count alleging a derivative suit by Williams; one plaintiff is a corporation. There

> are, then, differences. There may even be more differences than those that we have noted. Whether those differences are differences of form or of substance remains to be seen.
>
> ***It makes sense, therefore, to permit each attorney to control the destiny of his own client's case at this time.*** But to avoid duplication and unnecessary inconvenience to the parties and witnesses there should be coordinated discovery.

*Id.* at 636-37 (emphasis added).

Thus, courts uniformly recognize that the remedy for conflicts of interest between class actions and derivative actions – indeed among any type of inconsistent actions – is the appointment of different plaintiffs and different counsel. *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 256 (S.D.N.Y. 2003) (the district court appointed a lead plaintiff only after his counsel withdrew from representing a plaintiff in a companion derivative action); *see also Levine v. American Export Industries, Inc.*, 473 F.2d 1008, 1009 (2d Cir. 1973) ("In the event that a conflict of interest looms upon the horizon, the appointment of separate counsel for each group (class and derivative plaintiffs) may well be advisable.") Fund Class Counsel similarly should not be allowed to proceed with divided loyalties here, especially where the Fund Derivative and Class Plaintiffs already have separate representation.

Consistent with this line of cases, in the *ImClone* multidistrict litigation, the Southern District of New York recently rebuffed an attempt by Milberg Weiss to consolidate class and derivative actions against ImClone and to be appointed lead counsel for both types of actions. After briefing by class and derivative counsel, the court separately consolidated the class actions and the derivative actions, and appointed separate lead counsel for the two types of cases. *See Exhibit A to the Declaration of Mark Rifkin* accompanying the *Memorandum of Law in Support of Derivative Plaintiffs' Motion for Entry of Pretrial Order Number One*, which is included within Hillman Affadavit Ex. 3.

Ironically, when in a different posture, Milberg Weiss itself ***opposed*** the joint prosecution of class and derivative actions and pointed out the danger posed by such divided loyalties. In *Tepper v. Analytical Survey Inc.,* C.A. No. 00-0201, 2001 U.S. Dist. LEXIS 5589, (S.D. Ind. Apr. 11, 2001), Milberg Weiss, as class counsel in that case, argued that parties proposing to assert derivative claims should not be permitted to intervene in the securities fraud class action because the "interests in the derivative claims conflict with those of the Class in the securities litigation, [and therefore] the Court would be hard pressed to allow both types of litigation to proceed simultaneously."

**CONCLUSION**

For the foregoing reasons, the Derivative Plaintiffs respectfully request that this Court not: (1) appoint a Lead Plaintiff under the PSLRA to prosecute any Derivative Action, (2) consolidate the Derivative Actions with the Class Actions, (3) appoint Milberg Weiss as Coordinating Counsel with respect to both the Class Actions and Derivative Actions; or (4) establish an organizational structure for a market timing case outside of the Multidistrict Litigation pending in the District of Maryland.

Dated: April 27, 2004

Respectfully Submitted,

**DEUTSCH WILLIAMS BROOKS DERENSIS & HOLLAND, P.C.**

By: ______________________

Steven J. Brooks/BBO# 059140
Robert Hillman/BBO# 552637
99 Summer Street
Boston, MA 02110
617-951-2300
Fax: 617-951-2323
rhillman@dwboston.com

**CHIMICLES & TIKELLIS**
Nicholas E. Chimicles
Denise Davis Schwartzman
Timothy N. Mathews
100 Haverford Centre
Haverford, PA 19085
(610) 642-8500
Fax: (610) 649-3633

**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**
Stanley M. Grossman
350 Fifth Ave. - Suite 7210
New York, NY 10118
(212) 239-3800
Fax: (212) 661-8665

**FARUQI & FARUQI LLP**
**Nadeem Faruqi**
320 East 39th Street
New York, New York 10016
Tel: (212) 983-9330
Fax: (212) 983-9331

DWLIB 156820v1
8334/02

CERTIFICATE OF SERVICE

I, Robert D. Hillman, Esq., hereby certify that I caused a true copy of the following documents to be sent to the attorneys of record on the attached service list, by first-class mail, postage prepaid:

1. Memorandum of Law of Derivative Plaintiffs in Opposition to the Motions for Consolidation, Appointment as Lead Plaintiff, Appointment of Steering Committee, and Approval of Selection of Lead Counsel, Coordinating Counsel, and Liason Counsel (with Exhibits); and

2. Affidavit of Robert Hillman in Support of the Memorandum of Law of Derivative Plaintiffs in Opposition to the Motions for Consolidation, Appointment as Lead Plaintiff, Appointment of Steering Committee, and Approval of Selection of Lead Counsel, Coordinating Counsel, and Liason Counsel

Robert D. Hillman

Dated: April 27, 2004

**SERVICE LIST**

| | |
|---|---|
| Robert Jossen, Esquire<br>Swidler Berlin Shereff Friedman<br>405 Lexington Avenue<br>New York, NY 10174<br>212-891-9304<br>212-891-9598 fax | John P. Killacky, Esquire<br>McDermott, Will & Emery, LLP<br>227 W. Monroe Street<br>Suite 4400<br>Chicago, IL 60606-5096<br>312-372-2000<br>312-984-7700 fax<br>jkillacky@mwe.com |
| Ira K. Gross, Esquire<br>Sullivan & Worcester, LLP<br>1 Post Office Square<br>Boston, MA 02109<br>617-338-2823<br>617-338-2880 fax | Melvyn I. Weiss, Esquire<br>Steven G. Schulman, Esquire<br>Peter E. Seidman, Esquire<br>Andrei V. Rado, Esquire<br>Sharon M. Lee, Esquire<br>Milberg Weiss Bershad Hynes & Lerach LLP<br>One Pennsylvania Plaza<br>New York, NY 10119-0165<br>212-594-5300 |
| Curtis V. Trinko, Esquire<br>Law Offices of Curtis V. Trinko, LLP<br>16 West 46th Street, 7th Floor<br>New York, NY 10036<br>212-490-9550 | Charles J. Piven, Esquire<br>Law Offices of Charles J. Piven, P.A.<br>The World Trade Center-Baltimore<br>401 East Pratt Street, Suite 2525<br>Baltimore, MD 21202<br>410-986-0036 |
| Eric J. Belfi, Esquire<br>Rabin, Murray & Frank LLP<br>275 Madison Avenue<br>New York, NY 10016<br>212-682-1818 | Lionel Glancy, Esquire<br>Michael Goldberg, Esquire<br>Glancy & Binkow LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>310-201-9150 |
| David Pastor, Esquire<br>Peter A. Lagorio, Esquire<br>Gilman And Pastor, LLP<br>Stonehill Corporate Center<br>999 Broadway, Suite 500<br>Saugus, MA 01906<br>781-231-7850<br>781-231-7840 fax | Andrew L. Barroway, Esquire<br>Stuart L. Berman, Esquire<br>Darren J. Check, Esquire<br>Sean M. Handler, Esquire<br>Schiffrin & Barroway, LLP<br>Three Bala Plaza East, Suite 400<br>Bala Cynwyd, PA 19004<br>610-667-7706<br>610-667-7056 fax |